Robert S. Freund (SBN 287566)
ROBERT FREUND LAW
10866 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (323) 553-3407
Email: robert@robertfreundlaw.com

Attorneys for Defendant,
Easy Day Studios Pty Ltd

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY MILLER, an individual,<br><br>               Plaintiff,<br><br>v.<br><br>EASY DAY STUDIOS PTY LTD, an Australian proprietary limited company; REVERB COMMUNICATIONS, INC., a California corporation; and DOES 1-25 INCLUSIVE,<br><br>               Defendants. | CASE NO.  3:20-cv-02187-LAB-DEB<br><br>**DEFENDANT EASY DAY STUDIOS PTY LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:         March 15, 2021<br>Time:        11:15 a.m.<br>Crtrm:      14A<br>Judge:      Hon. Larry A. Burns |

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND OF CLAIMS AND ALLEGATIONS.....................................2

   A.  The Parties and *Skater XL* ...........................................................................2

   B.  Plaintiff's Allegations...................................................................................4

III.  LEGAL STANDARD.............................................................................................6

   A.  California's Anti-SLAPP Statute .................................................................6

   B.  The Process for Evaluating an Anti-SLAPP Motion.................................6

IV.   PLAINTIFF'S STATE LAW PUBLICITY RIGHTS CLAIMS ARE BARRED .........7

   A.  Plaintiff's Publicity Rights Claims Arise from Easy Day's Protected Activity .......7

   B.  Plaintiff Cannot Establish a Probability That He Will Prevail on the Merits of His Publicity Rights Claims................................................................................9

      1.    Easy Day's purported use of Plaintiff's likeness in *Skater XL* is protected by the First Amendment .........................................................................9

      2.    Plaintiff's claims fail because he consented to the alleged use of his image .14

      3.    Plaintiff's claims fail because any alleged use of his image was incidental and therefore not actionable .........................................................15

V.    EASY DAY IS ENTITLED TO ATTORNEYS' FEES AND COSTS.......................17

VI.   CONCLUSION ......................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aligo v. Time-Life Books, Inc.*,
   1994 WL 715605 (N.D. Cal. Dec. 19, 1994)...............................................16

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) ...............................................................6, 7

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983)...................................................................................13

*Brezeale v. Victim Servs., Inc.*,
   878 F.3d 759 (9th Cir. 2017) ....................................................................6

*Brown v. Entm't Merchants Ass'n*,
   564 U.S. 786 (2001) ..................................................................................6

*Charles v. City of L.A.*,
   697 F.3d 1146 (9th Cir. 2012) .................................................................13

*Davis v. Elec. Arts, Inc.*,
   775 F.3d 1172 (9th Cir. 2015) .................................................................16

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*,
   63 F. Supp. 2d 1127 (N.D. Cal. 1999) ......................................................6

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268, 1272–73 (9th Cir. 2013) ...................................................7

*Jones v. Corbis Corp.*,
   489 F. App'x 155, 166 (9th Cir. 2012) .....................................................14

*Khai v. Cty. of L.A.,,*
   730 F. App'x 408 (9th Cir. 2018) .............................................................17

*Lohan v. Perez*,
   924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) ..............................................16

*Makaef v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ....................................................................7

*Metabolife Intern., Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ....................................................................7

*Mindys Cosmetics, Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010) ....................................................................7

ii

*Newton v. Thomason*,
22 F.3d 1455, 1461 (9th Cir. 1994) ...................................................15

*Page v. Something Weird Video*,
960 F. Supp. 1438, 1434 (C.D. Cal. 1996) ........................................13

*Sarver v. Hurt Locker LLC*,
813 F.3d 891 (9th Cir. 2016) .............................................................13

*Simoni v. Am. Media, Inc.*,
2014 WL 12597640 (C.D. Cal. July 22, 2014)...................................13

*Stayart v. Google Inc.*,
710 F.3d 719, 723 (7th Cir. 2013) ....................................................16

*Tensor Law P.C. v. Rubin*,
2019 WL 3249595 (C.D. Cal. Apr. 10, 2019) .....................................14

*Upper Deck Co. v. Panini Am., Inc.*,
469 F. Supp. 3d 963 (S.D. Cal. 2020).................................................9

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
190 F.3d 963 (9th Cir. 1999) ...............................................................6

*Weisbuch v. Cty. of L.A.*,
119 F.3d 778 (9th Cir. 1997) ................................................................9

*Yeager v. Cingular Wireless, LLC*,
627 F. Supp. 2d 1770 (E.D. Cal. 2008) ..........................................9, 17

**State Court Cases**

*Braun v. Chronicle Publ'g Co.*,
52 Cal. App. 4th 1036 (1997) ..............................................................6

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
25 Cal. 4th 387 (2001) ...............................................................10, 12

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) ...............................................................13

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal.4th 1 (1994) ..............................................................................16

*Johnson v. Harcourt, Brace, Jovanovich, Inc.*,
43 Cal. App. 3d 880 (1974) ................................................................13

*Kirby v. Sega of Am., Inc.*,
144 Cal. App. 4th 47 (2006) ...............................................................10

iii

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

*No Doubt v. Activision Publ'g, Inc.*,
   192 Cal. App. 4th 1018 (2011) ........................................................................8

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ........................................................................8

*Olive v. Gen. Nutritional Ctrs., Inc.*,
   30 Cal. App. 5th 804 (2018) ..........................................................................14

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ........................................................................9

*Tamkin v. CBS Broadcasting, Inc.*,
   193 Cal. App. 4th 133 (2011) ........................................................................8

*Washington v. Take-Two Interactive Software, Inc.*,
   2012 WL 5358709 ........................................................................................11

*Washington v. Rockstar Games, Inc.*,
   No. BC450602 (L.A. Sup. Ct. May 4, 2011)..............................................11

*Wilcox v. Super. Ct.*,
   27 Cal. App. 4th 809 (1994) ..........................................................................6


**Statutes**

Cal. Civ. Proc. Code § 425.16 ..........................................................................6


**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................................9

1 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 6:31 (2d ed. 2014)................16

iv

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    **INTRODUCTION**

3    This case is a cash grab fueled by buyer's remorse, brought by a relatively

4 unknown skateboarder who claims he should have been paid more than he bargained for

5 and received for trying on clothes so that a videogame developer could create a generic

6 3D model.  Defendant Easy Day Studios Pty Ltd ("Easy Day") developed the popular

7 skateboarding game *Skater XL*.  Easy Day paid Plaintiff Zachary Miller ("Plaintiff") an

8 agreed-upon sum to perform the work, for the purpose of developing a generic,

9 anonymous, and infinitely customizable skater avatar in *Skater XL*.  In the game, players

10 may choose to play as one of four world-famous, elite professional skateboarders who are

11 identified by name, or they may alternatively choose the generic avatar and create their

12 own skater.

13    Easy Day hired Plaintiff for the work to develop the generic skater precisely

14 because he *is not* a recognizable celebrity skateboarder, in contrast to the four prominent

15 skaters in the game.  After Plaintiff completed his work and received payment, he was

16 shown images of the resulting generic skater.  In response, he expressed not just approval

17 of, but enthusiasm for, the generic model as it appears in the game—which, as mutually

18 agreed upon by the parties, makes no reference to Plaintiff whatsoever.

19    Now, more than a year and a half later, and after seeing the success of *Skater XL*'s

20 launch, he wants to shake down Easy Day for an additional payout based upon some

21 unspecified damage to his "reputation and goodwill," asserting a barrage of false

22 advertising and publicity rights claims under federal, state, and common law.  Unable to

23 truthfully allege any purchaser of *Skater XL* recognized him in the game, Plaintiff

24 fabricated examples in the Complaint, drawing from close acquaintances falsely alleged

25 to be "third parties unknown to Plaintiff."  Plaintiff has not been harmed, and he cannot

26 sufficiently plead the elements of his claims—let alone prevail on the merits of any of

27 them.

28

1

The Court should strike the common law and statutory publicity rights claims under California's Anti-SLAPP law, Civ. Proc. Code § 425.16.  Plaintiff's claims fall within the protection of California's anti-SLAPP statute because videogames are expressive works subject to First Amendment protection, and there is public interest in the game, even if there is no public interest in Plaintiff.

Plaintiff cannot establish a probability of success on his publicity rights claims, because, among other reasons, (i) any alleged use of Plaintiff's likeness in *Skater XL* was transformative and protected by the First Amendment; (ii) Plaintiff consented to the alleged use of his likeness in *Skater XL*; and (iii) the alleged resemblance to Plaintiff is incidental and therefore not actionable.  Accordingly, Plaintiff's publicity rights claims fail, and the Court should award Easy Day its attorneys' fees and costs.

Application of the anti-SLAPP statute is necessary in this case to protect Easy Day's First Amendment rights and deter others from bringing harassing litigation like this.

## II.   BACKGROUND OF CLAIMS AND ALLEGATIONS

### A.   The Parties and *Skater XL*

Easy Day is a videogame publisher, best known for creating the skateboarding videogame *Skater XL*, which it first published on or about July 28, 2020.  (Declaration of Dain Hedgpeth ("Hedgpeth Decl.") ¶ 2.)  Combining technically advanced computer software engineering and creative audiovisual elements, *Skater XL* offers players a realistic "sandbox" environment in which to master skateboarding tricks and hone their own expressive skating style.  (*Id.* ¶ 3.)

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

As a review of the game reveals,[1] players can select from one of four professional, world-renowned skateboarders (Tiago Lemos, Evan Smith, Tom Asta, or Brandon Westgate), or they may choose to play as a generic skater avatar, which can be infinitely customized across race, gender, hair color, apparel, and accessories.  (*Id.* ¶ 4.)  Each of the four professional skateboarders is identified by name within the game and are featured prominently in the advertising for *Skater XL*.  (*Id.*)  By contrast, the generic skater avatar does not have a name, biography, backstory, team or sponsor affiliation, or narrative associated with it.  (*Id.*)  The anonymity of the generic skater is intentional—the value to players is the avatar's customizability and precisely because it is *not* recognizable.  (*Id.* ¶ 5.)

To develop playable character models in videogames, game publishers frequently use a technique called photogrammetry, whereby multiple cameras capture or scan an object—or in this case, a person—to create textures that can be applied to 3D assets in the game.

To develop the generic skater using photogrammetry, Easy Day intentionally sought to scan a skateboarder who was not well known, so that the 3D model would not be recognizable to the public.  For those reasons, Easy Day contacted Mr. Miller, and the parties agreed that Mr. Miller would be scanned wearing various articles of clothing provided by Easy Day in exchange for payment compensating him for his time.  (*Id.* ¶ 6.)

---

[1] All of the facts regarding the gameplay of *Skater XL* described in this motion may be verified through a review of the game itself, which is subject to judicial notice.  *See* RJN at ¶ 1.  The accompanying Hedgpeth Declaration provides a summary of the content and features of the *Skater XL* game.  *See* Hedgpeth Decl. ¶¶ 3-5.  The summary aims to save the Court the gameplay needed to encounter the various content and features in the game. *See* Fed. R. Evid. 1006 ("The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.").  If the Court wishes, Easy Day can assist the Court with downloading and playing the game.

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

1   Mr. Miller performed the work on or about April 12, 2019 and was paid the same day.

2   (*Id.*)

3   In or about July 2019, Easy Day employee Jeff Goforth texted Plaintiff to show

4   him the renderings of the generic skater avatar.  (Declaration of Jeff Goforth "Goforth

5   Decl" ¶ 3, Ex. 1.)  After he was shown the model rendering, Plaintiff expressed not only

6   approval of the generic skater, but enthusiasm for it.  Specifically, Plaintiff asked, "What

7   is ***the character of me*** gonna be used for in the game?"  (*Id.*)  Mr. Goforth accurately

8   responded that it was "the generic guy" and "won't have your name anywhere or

9   anything if you're worried about that." (*Id.*)  Removing any doubt that Plaintiff

10  interpreted the words "or anything" in that message to refer only to the use of his name,

11  Plaintiff's next message replied, "***Sweet.*** So weird how well they can wrap ***my face***

12  around a 3D model haha."  (*Id.* [emphasis added].)

13  Thereafter, Plaintiff had no contact with Easy Day for over year, until on or about

14  July 30, 2020, Plaintiff texted Mr. Goforth to ask for the "paperwork [he] had on the

15  original shoot" because his "agent" was asking him for it.  (*Id.* ¶ 3, Ex. 2.)

16  Approximately six weeks later, Plaintiff sent a cease-and-desist letter to Easy Day's

17  trademark counsel, who represented Easy Day in the United States for the limited

18  purpose of preparing and submitting a trademark application.  (Complt. ¶ 16; Dkt. No. 7-

19  1 [Miller Dec. ISO Opp. to Ex Parte] at 11.)  Plaintiff thereafter filed his Complaint on

20  November 9, 2020.  (Dkt. No. 1 [Complt.].)

21  ## B.   Plaintiff's Allegations

22  Plaintiff's Complaint alleges, in conclusory fashion, that Easy Day and marketing

23  agency Reverb Communications, Inc. ("Reverb") misappropriated his likeness,

24  referencing an alleged resemblance between Plaintiff and the generic skater avatar.

25  (Complt. ¶¶ 11-15.)  Plaintiff does not allege that Defendants used his name or

26  photographic images of him in *Skater XL* or in any advertisements for the game.  In other

27  words, in *Skater XL* there is no virtual skater named Zachary Miller, there is no

28  photographic image of Zachary Miller, and the generic avatar Plaintiff claims uses his

4

likeness does not share *any* single identifiable attribute with Plaintiff.  Based on Defendants' alleged misappropriation, Plaintiff asserts claims for (1) false endorsement in violation of the Lanham Act; (2) false advertising in violation of the Lanham Act; (3) violation of California's statutory right of publicity, Civ. Code section 3344; and (4) violation of California's common law right of publicity.  (*Id.* ¶¶ 20-49.)

Unable to articulate any conduct specifically attributable to Easy Day or Reverb, Plaintiff instead lumps them together throughout the Complaint, alleging that "Defendants" did everything about which he complains.  Worse, realizing he cannot truthfully allege that any impartial *Skater XL* player recognized him in the game or in advertising, Plaintiff offers ***demonstrably false*** allegations in the Complaint, claiming to present two screenshots taken from Instagram from "***third parties unknown to Plaintiff*** …."  (Complt. ¶ 12.)

In reality, ***both of the messages were posted by close acquaintances of Plaintiff***. Plaintiff orchestrated evidence to show confusion.  Taking each in turn: Instagram user @cyread posted a video of Plaintiff skateboarding on Instagram in 2018, and Plaintiff follows him on Instagram (compare Complt. ¶12 with Freund Decl. ¶¶ 2-3, Exs. 1, 2).

Similarly, *Plaintiff* posted a photograph to Facebook on his birthday in July 2020 that was taken by Instagram user @tylurgrom while the two were surfing together (compare Complt. ¶12 with Freund Decl. ¶ 4, Ex. 3):

 

5

III.   **LEGAL STANDARD**

A.   **California's Anti-SLAPP Statute**

In 1992, California enacted its anti-SLAPP statute (California Code of Civil Procedure § 425.16) to allow early dismissal of lawsuits aimed at chilling the valid exercise of constitutional rights to free speech and to petition for redress of grievances. *See Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997). "SLAPP" stands for strategic lawsuits against public participation. *See Batzel v. Smith*, 333 F.3d 1018, 1023-24 (9th Cir. 2003). "It's helpful to think of a 'SLAPP' as a lawsuit defined by a particular strategy: obtaining an economic advantage over a defendant, and not necessarily the vindication of a cognizable legal right." *Brezeale v. Victim Servs., Inc.*, 878 F.3d 759, 764 (9th Cir. 2017) (citing *Wilcox v. Super. Ct.*, 27 Cal. App. 4th 809 (1994)).

The Anti-SLAPP statute provides that:

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Cal. Civ. Proc. Code § 425.16(b)(1).

The Anti-SLAPP statute explicitly provides that it "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a). The Ninth Circuit has held that section 425.16 applies to state law claims when those claims are adjudicated in federal court. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999); *see also Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[T]he anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims.").

B.   **The Process for Evaluating an Anti-SLAPP Motion**

In considering an Anti-SLAPP motion, courts conduct a two-part analysis. "First, the defendant must 'make a prima facie showing that the plaintiff's suit arises from an act

6

by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution.'" *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272–73 (9th Cir. 2013) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)).  The defendant need not show that the plaintiff intended to chill the speech or "that any speech was actually chilled."  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010).  "[A] court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis."  *Chavez v. Mendoza*, 94 Cal. App. 4th 1083, 1089 (2001).

Once a defendant has made a prima facie showing, the burden shifts to the plaintiff to establish a "reasonable probability" that he will prevail on his claims.  Cal. Civ. Proc. Code § 425.16(b)(1); *Makaef v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). The plaintiff must demonstrate that the complaint is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (quotation omitted).

If the plaintiff cannot make the requisite showing, the action is dismissed and the defendant must be awarded its attorneys' fees and costs.  Cal Civ. Proc. Code § 425.16(c).

**IV.   PLAINTIFF'S STATE LAW PUBLICITY RIGHTS CLAIMS ARE BARRED**

**A.   Plaintiff's Publicity Rights Claims Arise from Easy Day's Protected Activity.**

Plaintiff's third and fourth causes of action, alleging violations of his statutory and common law right of publicity under California law, "arise[] from an act in furtherance of the defendant's constitutional right to free speech."  *Makaef*, 715 F.3d at 261. Protected activities include "any written or oral statement or writing made in a place open to the public or in a public forum in connection with an issue of public interest," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the

7

constitutional right of free speech in connection with a public issue or an issue of public interest."  Cal. Code Civ. Proc. § 425.16(e)(3)-(4).

Here, Plaintiff's claims arise entirely out of the alleged use of his "image and likeness" in *Skater XL*.  (Complt. ¶¶ 38, 45.)  It is well established that videogames such as *Skater XL* are expressive works subject to First Amendment protection.  *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2001) ("California correctly acknowledges that video games qualify for First Amendment protection."); *No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1027 (2011) ("Videogames generally are considered 'expressive works' subject to First Amendment protections.").

Easy Day's alleged uses of Plaintiff's likeliness were acts in furtherance of its exercise of the right of free speech.  *Skater XL* is an exercise of free speech, and, therefore, Easy Day's alleged acts helped to advance or assist in the creation of the game and are protected.  *See Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 144 (2011) (ruling "creation of a television show is an exercise of free speech" and "defendants' acts helped to advance or assist in the creation … of a popular television show").

Finally, there can be no debate that there was and is substantial public interest in *Skater XL* itself, even if there is no public interest in Plaintiff.  *See id.* at 144 (finding first prong of anti-SLAPP satisfied where there was public interest in television series despite no public interest in plaintiffs' personae).  "[A]n issue of public interest … is *any issue in which the public is interested*.  In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original).

Here, the creation of *Skater XL* is an issue of public interest because the public was demonstrably interested in the creation of the game, as shown by the Complaint's allegations that Plaintiff received "many messages and tags" from "third parties …

8

expressing excitement" about the game and by more than 10,000 customer reviews on one of the online marketplaces where it is sold.  (Complt. ¶12; Freund Decl. Ex. 5.)

Easy Day's alleged conduct therefore arises from acts in furtherance of its right of free speech in connection with an issue of public interest, satisfying the first part of the anti-SLAPP analysis.  Accordingly, Plaintiff must demonstrate a probability of prevailing on his claims over Easy Day's defenses.  Plaintiff cannot do so.

### B.  Plaintiff Cannot Establish a Probability That He Will Prevail on the Merits of His Publicity Rights Claims.

"The elements of a right-of-publicity claim under California common law are: '(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.'  A statutory claim for right to publicity under California Civil Code § 3344 requires plaintiff to prove 'all the elements of the common law cause of action' plus 'a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose.'"  *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 983-84 (S. D. Cal. 2020) (quoting *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664 (2010)).

Both of Plaintiff's publicity rights claims fail because (1) Easy Day's alleged use of Plaintiff's likeness was transformative and protected by the First Amendment; (2) Plaintiff consented to the alleged use of his image; and (3) any alleged use of Plaintiff's image was incidental at most.  The Court should strike Plaintiff's claims because the Complaint establishes that Easy Day's affirmative defenses apply as a matter of law.  *See Yeager v. Cingular Wireless, LLC*, 627 F. Supp. 2d 1770, 1177 (E.D. Cal. 2008) ("[W]here the court can discern from the face of the pleadings that an affirmative defense applies as a matter of law, dismissal pursuant to Rule 12(b)(6) may be appropriate.") (citing *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n. 1 (9th Cir. 1997)).

    1.  <u>Easy Day's purported use of Plaintiff's likeness in *Skater XL* is protected by the First Amendment.</u>

9

The California Supreme Court has held that when a defendant "is faced with a right of publicity challenge to his or her work, he or she may raise as an affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements *or* that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 391 (2001) (*Comedy III*) (emphasis added).  Both issues regarding First Amendment protection favor Easy Day here.

**_First_**, Easy Day's alleged use of Plaintiff's likeness in *Skater XL* was transformative because that purported likeness is merely one of the "raw materials" from which the game's generic skateboarder model is synthesized.  "The transformative test is straightforward:  The 'inquiry is whether the celebrity likeness is one of the "raw materials" from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question.'" *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 58 (2006) (quoting *Comedy III* 25 Cal. 4th at 391).

California courts have recognized that even if a person's likeness is used in connection with the creation of a videogame, the addition of creative elements can "transform" the game into a creative work that is entitled to First Amendment protection. *See Kirby*, 144 Cal. App. 4th at 57-62.  Here, Plaintiff's claims fail because Easy Day's alleged use of Plaintiff's likeness was transformative under California law.

Plaintiff's alleged likeness appears in the game solely because of his bargained-for and agreed-upon contributions to the development of the game, where he served as a "blank canvas" model by trying on clothes.  (*See* Complt. ¶ 10 ["Plaintiff understood that his only role was to wear several different clothing outfits and have those outfits motion captured for use in a video game where characters skateboard."].)

Unlike the four world-renowned professional skateboarders who appear by name as playable characters in *Skater XL*, the generic skater does not even have a name, and it is infinitely customizable across multiple dimensions, including race, gender, hairstyle,

10

and clothing.  The generic skater is effectively a mannequin—an intentionally unidentifiable foundation upon which players may create a limitless number of unique virtual skateboarders.  It is hardly a "main character" as Plaintiff alleges (Complt. ¶ 11); the skater has no name, no backstory or biography, no team or sponsor affiliations, and there is no narrative associated with him in the game.  (Hedgpeth Dec. ¶ 4.)  The generic skater is anonymous by design, flatly refuting Plaintiff's allegation that the character was "designed to capitalize on the goodwill, recognition, and fame associated with Plaintiff." (Complt. ¶14.)

Therefore, even accepting for this Motion that Easy Day used Plaintiff's likeness in creating the generic skater, Easy Day added significant creative elements that render the use transformative.[2]

Furthermore, Plaintiff's Complaint demonstrates that his resemblance to the generic skateboarder is marginal at most—the best comparison screenshot Plaintiff could muster undercuts his claim: Plaintiff's eye color, hair color, and hair length differ from the playable skater.  (Complt. ¶ 10.)  And the Complaint merely establishes that the default generic skater and Plaintiff resemble each other only insofar as both present as Caucasian men.  (*See id.*)  Plaintiff cannot truthfully allege, let alone prove with

---

[2]  *See, e.g.*, *Washington v. Take-Two Interactive Software, Inc.*, L.A. Sup. Ct. No. B232929, 2012 WL 5358709, at *5 (affirming striking publicity rights claims against videogame creator under anti-SLAPP statute based on transformative use defense where trial court concluded game's character was "almost infinitely variable: he can be placed in different virtual cities in different virtual neighborhoods within each city; his clothes and accessories can be changed; and even his physical appearance can grow or shrink, fatten up or slim down, and change from weak to strong").  The trial court in *Washington* ruled that, as here, the videogame character "has a generic appearance that is not readily identifiable as Plaintiff, and the character's generic appearance can be altered and varied in many substantial and creative ways.  Defendants have therefore made a very strong showing in support of their [First Amendment] affirmative defense." *Washington v. Rockstar Games, Inc.*, No. BC450602, at *4 (L.A. Sup. Ct. May 4, 2011).  Easy Day recognizes that unpublished opinions from state appellate and trial courts are not precedential, but respectfully offers them here for persuasive value.

11

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

admissible evidence, that his likeness contributed anything more than a "raw material" model from which the generic skater was synthesized—exactly as bargained for by the parties.  Plaintiff's claims fail for this reason alone.

***Second***, *Skater XL*'s commercial value does not derive from Plaintiff's fame whatsoever, let alone "primarily" from it.  "***When the value of the work comes principally from some source other than the fame of the celebrity…it may be presumed that sufficient transformative elements are present to warrant First Amendment protection***."  *Comedy III*, 25 Cal. 4th at 407 (emphasis added).  The *Comedy III* Court offered the following inquiry "courts may find useful" in determining whether a defendant's use is subject to First Amendment protection: "[D]oes the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted?  ***If this question is answered in the negative, then there would generally be no actionable right of publicity."***  25 Cal. 4th at 407 (emphasis added).  Easy Day is entitled to that presumption of First Amendment protection here because the value of the game is not primarily derived from the generic character's alleged resemblance to Plaintiff.

*Skater XL*'s value is derived from its realistic skateboarding physics, nuanced controls, passionate player community, and the ability to play as four icons of professional skateboarding.  (Hedgpeth Dec. ¶ 4.)  In more than 10,000 customer reviews of *Skater XL* on the Steam platform, Amazon, and other online retailers, Easy Day is unable to find a single review that mentions Plaintiff.  Nor has any review of *Skater XL* from any magazine, blog, or other media outlet mentioned Plaintiff.  (*Id.* ¶ 5.)  Proving that he cannot truthfully identify any bona fide example of the public recognizing his likeness in the game, Plaintiff instead included two screenshots from personal acquaintances in the Complaint and lied about knowing them, as discussed above.  *See supra* Section II.B.

Plaintiff has not and cannot allege, much less prove, that a single sale of *Skater XL* was made because any customer believed that Plaintiff appeared in the game.  Nor could plaintiff truthfully allege or prove that *Skater XL*'s economic value was derived *primarily*

from his alleged appearance and purported fame, especially compared to the four professional, world-famous skateboarders who appear in the game and *are* identified by name therein.  *See Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at \*7 (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) (striking publicity rights claim under anti-SLAPP statute because "[w]hatever recognition or fame Plaintiff may have achieved, it had little to do with the success of the movie.  Thus, Plaintiff's claim is barred by the First Amendment as a matter of law.").[3]

Finally, because *Skater XL* is an expressive work protected by the First Amendment, Plaintiff's allegations regarding Easy Day's "commercial advertising efforts in connection with the promotion of the Game" (Complt. ¶ 29) are protected as well.  It is settled that advertising that promotes a protected work is necessarily non-commercial, protected speech.  "Promotional speech may be noncommercial if it advertises an activity itself protected by the First Amendment."  *Page v. Something Weird Video*, 960 F. Supp. 1438, 1434 (C.D. Cal. 1996) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)); *see Charles v. City of L.A.*, 697 F.3d 1146, 1155 (9th Cir. 2012) ("[I]f advertisements for expressive works were not entitled to the same immunity from tort as the underlying work, publishers would be unable to truthfully advertise certain protected works."); *Simoni v. Am. Media, Inc.*, 2014 WL 12597640, at \*2 (C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017) (advertisements for protected publication were not "commercial speech" where they "refer[red] to the contents of the publication").

---

[3] *See also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 864 (2018) (concluding as matter of law that film's "'marketability and economic value' does not 'derive primarily from [plaintiff's] fame' but rather 'comes principally from … the creativity, skill, and reputation' of [its] creators") (quoting *Comedy III*, 25 Cal. 4th at 406); *cf. Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 895 (1974) (use in textbook of article about janitor who found large sum of money was not actionable misappropriation of likeness because article was neither "a primary reason for the textbook" "nor was it a substantial factor in the students' purchases of the book.").

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE PURSUANT TO C.C.P. § 425.16

1  Because Plaintiff's resemblance was, at most, no more than a raw material used to

2  synthesize the anonymous avatar, and because no plausible argument can be made that

3  the success of *Skater XL* derives primarily from Plaintiff's fame, Easy Day is afforded

4  the presumption that sufficient transformative elements warrant First Amendment

5  protection as a matter of law.[4]

6        2.    <u>Plaintiff's claims fail because he consented to the alleged use of his image.</u>

7        Plaintiff's publicity rights claims fail as a matter of law for the additional reason

8  that he consented to the alleged use of his likeness that forms the basis of his Complaint.

9  Consent to use a name or likeness need not be express or in writing; it may be implied

10  from the consenting party's conduct and the circumstances of the case.  *See Jones v.*

11  *Corbis Corp.*, 489 F. App'x 155, 166 (9th Cir. 2012) ("Consent … is to be determined

12  objectively from the perspective of a reasonable person.").  Even if the generic skater

13  used Plaintiff's likeness, Plaintiff's Complaint establishes that he consented to Easy

14  Day's use.

15        Plaintiff admits he agreed to model a variety of outfits and knew that his

16  participation would assist with the production of *Skater XL*.  (Complt. ¶ 10.)  Plaintiff's

17  Complaint also references discussions with Easy Day from several months after the

18  work, which contradict the Complaint's conclusory allegation that Plaintiff "never

19  consented" to the generic skater's appearance.  (*Id.*; *see Tensor Law P.C. v. Rubin*, 2019

20  WL 3249595, at *5 (C.D. Cal. Apr. 10, 2019) ("[T]o the extent that a document

21  incorporated by reference in a complaint contradicts the plaintiff's conclusory allegations

22  in the complaint, the court need not accept as true plaintiff's contradictory allegations.").)

23  ───────────────

24  [4] Because Plaintiff has not alleged, and could never prove, that Easy Day generated any
revenue attributable to unauthorized use of Plaintiff's likeness, the section 3344 claim

25  fails as a matter of law for this additional reason.  *See Olive v. Gen. Nutritional Ctrs.,*

26  *Inc.*, 30 Cal. App. 5th 804, 814 (2018) ("The statutory language of section 3344 is
unambiguous—the plaintiff bears the burden of presenting proof of the gross revenue

27  attributable to the defendant's unauthorized use of the plaintiff's likeness, and the
defendant must then prove its deductible expenses.").

28

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16

In those conversations, Easy Day shared with Plaintiff images of the generic skater.  After he was shown the rendering, Plaintiff asked, "What is ***the character of me*** gonna be used for in the game?"  (Goforth Decl., Ex. 1 [emphasis added].)  An Easy Day employee accurately responded that it would be the "generic guy" and "won't have your name anywhere or anything if you're worried about that."  (*Id.*)  Removing any doubt that Plaintiff interpreted the words "or anything" in that message to refer only to the use of his name, Plaintiff's next message replied, "***Sweet.*** So weird how well they can wrap ***my face*** around a 3D model haha."  (*Id.* [emphasis added].)

Courts recognize that statements like Plaintiff's, expressing enthusiasm in response to the use of his likeness, establish consent as a matter of law and bar publicity rights claims based on such use.  For example, in *Newton v. Thomason*, the plaintiff's right of publicity claims failed because the plaintiff could not establish a lack of consent to the allegedly misappropriated use of his name.  22 F.3d 1455, 1461 (9th Cir. 1994).  The court determined that, even though the plaintiff never expressly consented, he expressed excitement about the use of his name in a TV series and never objected to that use over a period of several months.  *Id.* ("Although Newton never uttered the words, 'I consent,' it is obvious that he did consent.").

Here, Plaintiff's statements prove that Plaintiff believed the generic skater looked like him, knew that the virtual model as rendered would be used in the game, understood that his name would *not* be used in the game but that "my face" would, never objected to Easy Day's use of that model, expressed excitement over that use, and waited over a year and a half before sending a cease-and-desist letter.  Plaintiff's Complaint and the judicially noticeable conversation establish Plaintiff's objective, implied consent to the use about which he now complains.  Because he cannot truthfully allege lack of consent—an essential element of both publicity rights claims—those claims fail as a matter of law.

3.  <u>Plaintiff's claims fail because any alleged use of his image was incidental and therefore not actionable.</u>

15

Incidental use is a defense for right of publicity and commercial misappropriation claims. *See, e.g.*, *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *3 (N.D. Cal. Dec. 19, 1994) ("Defendants' use of Plaintiff's picture … is incidental and, therefore, does not state either a common law claim or a claim under section 3344.")[5]  "The rationale for this rule is that an incidental use has no commercial value." *Id.* at *2 (N.D. Cal. Dec. 19, 1994) (dismissing publicity rights claims where "Defendants' use of Plaintiff's picture is incidental and, therefore, does not state either a common law claim or a claim under section 3344.").  "Whether the incidental use doctrine is applicable is determined by the role that the use plays with respect to the entire publication." *Id.*

Courts generally consider four factors when assessing an incidental use defense:

"(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication."

*Davis v. Elec. Arts, Inc.*, 775 F.3d 1175, 1180 (9th Cir. 2015) (quoting *Aligo*, 1994 WL 715605, at *3).  Each of these factors weighs against Plaintiff.

***First***, Easy Day's alleged use of Plaintiff's likeness has no value that would result in commercial profit to Easy Day.  While the work that Plaintiff contributed had value—for which he bargained for and received payment—any passing resemblance to Plaintiff does not.  That is why Easy Day never mentions Plaintiff's name in *Skater XL* or in any of its advertising materials, whereas it showcases the names of the four famous

---

[5] *See also* 1 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 6:31 (2d ed. 2014) (citing "the general rule that an insignificant or fleeting use of plaintiff's identity is not an infringement"); *Stayart v. Google Inc.*, 710 F.3d 719, 723 (7th Cir. 2013) (recognizing incidental use as defense to right-of-publicity claims under Wisconsin common law and statute); *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) (applying incidental use defense to right-of-publicity claim under New York law); *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1 n. 6 (1994) (en banc) (citing favorably Restatement Second of Torts for proposition that "mere incidental use [is] not actionable" as "appropriation of [the] commercial or other value of [a] name or likeness").

16

professional skateboarders who appear in the game as playable characters.  The purpose of the generic skater is precisely that it *does not* have any unique quality; it is the blank canvas upon which players can create their own unique avatars.  Therefore, the first two factors weigh against Plaintiff.

      **<u>Second</u>**, there is no relationship between the generic skater's alleged resemblance to Plaintiff and the purpose of *Skater XL*, and the alleged resemblance to Plaintiff does not feature prominently in the game.  Players may choose to play as one of four named, world-renowned professional skateboarders, or they may play as a generic customizable skater.  If the player chooses one of the pros, or customizes the generic skater in any way, then the alleged resemblance to Plaintiff identified in the Complaint is entirely absent from the gaming experience.

      Therefore, all four of the incidental use factors weigh against Plaintiff, barring his claims.  *See Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) ("A claim is also not actionable when a plaintiff's likeness is appropriated because it 'is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him.'") (quoting Restatement (Second) of Torts § 652C, cmt. d).

## V.    **EASY DAY IS ENTITLED TO ATTORNEYS' FEES AND COSTS.**

      Attorneys' fees are mandatory for a successful anti-SLAPP motion.  Cal Civ. Proc. Code § 425.16(c)(1); *see Khai v. Cty. of L.A.*, 730 F. App'x 408, 411 (9th Cir. 2018).

## VI.   **<u>CONCLUSION</u>**

      For the foregoing reasons, Easy Day respectfully requests that the Court strike Plaintiff's third and fourth causes of action against Easy Day with prejudice.

DATED:  January 15, 2021        Respectfully submitted,

             By   */s/ Robert S. Freund*
                  Robert S. Freund
                  Attorneys for Defendant
                  EASY DAY STUDIOS PTY LTD

MEMORANDUM IN SUPPORT OF DEFENDANT EASY DAY'S TO STRIKE
PURSUANT TO C.C.P. § 425.16