Matthew Miller, Esq. (SBN 185741)
matt@millermlaw.com
LAW OFICES OF MATTHEW MILLER
755 Fresca Court
Solana Beach, California 92075
Telephone: (858) 755-6688
Facsimile: (425) 962-7935

Attorney for Plaintiff Zachary Miller

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY MILLER, an individual,<br><br>      Plaintiff,<br><br>  vs.<br><br>EASY DAY STUDIOS PTY LTD, an Australian proprietary limited company; REVERB COMMUNICATIONS, INC., a California corporation; and DOES 1-25 INCLUSIVE,<br><br>      Defendants. | Case No.: 3:20-cv-02187-LAB-DEB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT EASY DAY STUDIOS PTY LTD'S MOTION TO DISMISS**<br><br>Date:     March 15, 2021<br>TIME:    11:15 A.M.<br>CRTRM:  14A<br>Judge:    Hon. Larry A. Burns |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD ............................................................................................1

III. ARGUMENT .........................................................................................................2

   A. Miller's Claims Satisfy Fed. R. Civ. P. 8(a) ....................................................2

   B. Miller's Lanham Claims Are Sufficiently Pled ..............................................3

      1. The Complaint Satisfies Fed. R. Civ. P. 9(b).................................................3

      2. Defendants' Use of Miller's Likeness is Likely to Cause Consumer Confusion ......................................................................................................4

      3. Defendants' First Amendment Rights Are Not a Defense to the Unauthorized Use of Miller's Image.............................................................4

   C. Punitive Damages Are Available for the California Statutory and Common-Law Claims .........................................................................................................8

   D. Foreign Companies Transacting Business Within California Must Register with the Secretary of State ................................................................................9

IV. CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)), cert. denied, U.S., 129, S. Ct. 754, 172 L. Ed. 2d 726 (2008) ................................................................................................................ 2

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ........................................................................ 1, 2

*Brown v. Electronic. Arts, Inc.*,
  724 F.3d 1235, (9th Cir. 2013) ........................................................................... 6

*Clark v. Allstate Ins. Co.*,
  106 F.Supp.2d 1016 (S.D.Cal.2000) ................................................................. 8

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ............................................................................. 6

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
  778 F.3d 1059 (9th Cir. 2015) ........................................................................ 4, 8

*In re NCAA Student-Athlete Name & Likeness Licensing Litigation*,
  724 F.3d 1268, 107 U.S.P.Q.2d 1629 (9th Cir. 2013) ...................................... 5

*Jack Russel Terrier Network of Northern Ca. v. Am. Kennel Club, Inc.*,
  407 F.3d 1027 (9th Cir. 2005) ........................................................................... 7

*Kournikova v. Gen. Media Commc'ns Inc.*,
  278 F. Supp. 2d 1111 (C.D. Cal. 2003) ............................................................ 7

*Lunsford v. United States*,
  570 F.2d 221 (8th Cir.1977) .............................................................................. 9

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir.2002) .............................................................................. 5

*McElroy v. Juarez*,
  2020 WL 5408933 (S.D. Cal. Sept. 9, 2020) ................................................... 3

*Rees v. PNC Bank, N.A.*,
  308 F.R.D. 266 (N.D. Cal. 2015) ...................................................................... 8

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir.1989) ....................................................................... 4, 5, 6

*Shaterian v. Wells Fargo Bank, N.A.*,
  829 F.Supp.2d 873 (N.D.Cal.2011) .................................................................. 8

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9 Cir. 1979) ............................................................................ 5, 6

*Sollberger v. Wachovia Secs., LLC*,
  2010 WL 2674456 (C.D. Cal. June 30, 2010) .................................................. 3

*Sparrow Inc. v. Lora*,
  2014 WL 12561587 (C.D. Cal. Aug. 5, 2014)......................................................................4

*Stanbury Law Firm v. IRS*,
  221 F.3d 1059 (8th Cir.2000).........................................................................................9

*Swierkiewicz v. Sorema N. A.*,
  534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)........................................................3

*Weber v. Department of Veterans Affairs*,
  521 F.3d 1061 (9th Cir.)..................................................................................................2

**STATUTES**

Cal. Civ. Code § 3344(a)....................................................................................................8

Cal. Corp. Code § 2105(a).................................................................................................9

Cal. Corp. Code § 2105(a)(5)............................................................................................9

Cal. Code of Civ. Pro. § 425.16 ........................................................................................1

Fed. R. Civ. P. 12(b)(6) .....................................................................................................1

Fed. R. Civ. P. 8(a)........................................................................................................1, 2

Fed. R. Civ. P. 9(b).................................................................................................1, 2, 3, 4

Fed.R.Civ.P. 12(f) ..........................................................................................................8, 9

Lanham Act, Section 43(a)......................................................................................... Passim

## I. INTRODUCTION

Plaintiff Zachary Miller's ("Miller") case and the facts are detailed in Miller's concurrently filed opposition to Defendant Easy Day Studio Pty Ltd.'s ("Easy Day") which was joined by Defendant Reverb Communications, Inc. ("Reverb"), (collectively "Defendants"), motion to strike pursuant to Cal. Code of Civ. P. § 425.16 and is incorporated herein by reference.

Miller has sufficiently identified and described each party named in Miller's Complaint and included a statement of the claim showing that he is entitled to relief in full compliance with Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 9(b). Further, Miller's Lanham Act claims are appropriate in this matter as Defendants knowingly used Miller's likeness and such use is likely to cause consumer confusion as to Miller's endorsement of Defendants' videogame.

Punitive damages are appropriate here due to Defendants' willfully brazen use of Miller's likeness without his consent. Lastly, Miller's counsel did not threaten Easy Day with any "administrative charges," rather simply informed Easy Day of their duty to register with the California Secretary of State and the requirements that go along with said registration. It should be noted that Reverb is registered with the California Secretary of State and service of it was not an issue.

For all of the reasons detailed below, Defendants' motion to dismissed should be denied.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) motions are viewed with disfavor. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). A claim may be dismissed under Fed. R. Civ. P. 12(b)(6) only if it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint is liberally construed and all allegations of material fact are to be taken as true, as well as any reasonable inferences drawn from them, and

construed in the light most favorable to plaintiffs. *Broam,* at 1028. A complaint "need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), cert. denied, __ U.S. __, 129, S. Ct. 754, 172 L. Ed. 2d 726 (2008).

While the Ninth Circuit has not ruled that Fed. R. Civ. P. 9(b) applied to Lanham Act claims, some district courts have applied this standard. *Pom Wonderful LLC v. Ocean Spray Cranberries*, Inc., 642 F. Supp. 2d 1112, 1123-24 (C.D. Cal. 2009). Whether or not Miller is required to meet this standard, he does so in his Complaint.

### III. ARGUMENT

#### A. Miller's Claims Satisfy Fed. R. Civ. P. 8(a)

The standard that Miller must meet to satisfy Fed. R. Civ. P.8(a) is to provide the defendants "'fair notice of what the ... claim is and the grounds upon which it rests.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 668-669, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twomby*). During Miller's investigation of the defendants, Miller's counsel found that Easy Day listed Reverb's physical address as the contact address for Easy Day on its website. (M. Miller, Esq., Declaration, ¶ 4). Reverb, on its website, listed the videogame *Skater XL* as one of "Our Games." (*Id*., ¶ 5). And, when reviewing Reverb's "Our Services," listed on its website, Reverb states "Our Services" include, "publishing," "video creation," "distribution" and "marketing." (*Id*., ¶ 6). It is Miller's understanding that parties who are "publishing" videogames are the parties responsible for the content of those videogames. It should be noted that Easy Day's Director, Dain Hedgpeth, describes Easy Day as "videogame **publisher**, best known for creating the skateboarding videogame *Skater XL* ..." (emphasis added) (Hedgpeth Declaration, ¶ 2). With this information being the only information available about the parties in regards to the *Skater XL* videogame, Miller was and remains unable to discern which actions in the creation, distribution

2

and marketing of the *Skater XL* videogame should be attributed to Easy Day and/or to Reverb.

In contrast to the matter at issue here, the cases Defendants cite in support, involve multiple defendants in a complex financial transaction, (*Sollberger v. Wachovia Secs., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)), and an incarcerated prisoner who claimed that, "a doctor, two wardens, and other unidentified Richard J. Donovan Correctional Facility ("RJD") medical and custody employees named only as Does violated his constitutional rights in various ways…" *McElroy v. Juarez*, 2020 WL 5408933, at *6 (S.D. Cal. Sept. 9, 2020). This matter only involves two defendants, each have been provided fair notice of the claims made, as well to what alleged actions they took in the creation, distribution and marketing of the *Skater XL* videogame. "A court may dismiss a complaint [under Rule 8(a)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Both Easy Day and Reverb have received fair notice.

It should be noted that Reverb joined Easy Day's Motion to Dismiss and Motion to Strike without raising any issues, in law or fact, that would distinguish Reverb's actions and legal position from that of Easy Day's. (Dkt. 15 and 16). The only logical conclusion is that Defendants are similarly situated and the pleadings are sufficient to provide both Defendants with fair notice.

**B.     Miller's Lanham Claims Are Sufficiently Pled**

**1.     The Complaint Satisfies Fed. R. Civ. P. 9(b)**

"The Ninth Circuit has not determined that Rule 9(b) applies to Lanham Act claims, although some district courts have applied this standard." *Pom Wonderful LLC,* at 1123-24. Whether or not Miller is required to meet the standard required by Fed. R. Civ. P. 9(b), Miller's Complaint contains sufficient facts to meet this standard.

In the Complaint, Miller alleges the **circumstances** under which the false

endorsement was made – the unauthorized use of his likeness in the Skater XL videogame and promotional material would imply endorsement by Miller, (Complaint ¶¶ 11 and 22); **to whom** – to the relevant consumers (Complaint ¶ 23); and **a specific time-frame** in which they were made – "on or about July 28, 2020" (Complaint ¶ 11). "To satisfy the requirement of Rule 9(b), Plaintiff must allege with particularity the **circumstances** under which Lora made the false statements, the persons **to whom** he made the statements, and **a specific time-frame** in which they were made." (emphasis added) *Sparrow Inc. v. Lora*, 2014 WL 12561587, at *5 (C.D. Cal. Aug. 5, 2014). The Complaint is pled with sufficient facts to give Defendants notice, satisfying the standard of Rule 9(b).

### 2. Defendants' Use of Miller's Likeness is Likely to Cause Consumer Confusion

Miller is a world-class professional skateboarder who is paid by third parties in order for them to use his likeness in their marketing material to signifying his endorsement of their products. (Miller Declaration, ¶ 3 and Brittain Declaration, ¶ 3). The Ninth Circuit has found that, "Our jurisprudence recognizes a § 1125(a) claim for misuse of a celebrity's persona. '[A] celebrity whose endorsement of a product is implied through the imitation of a distinctive attribute of the celebrity's identity, has standing to sue for false endorsement under section 43(a) of the Lanham Act.'" *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015) (Quoting *Waits v. Frito–Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir.1992). Defendants' unauthorized use of Miller's likeness in its videogame and promotional material is likely to confuse consumers that he has endorsed or is associated with Defendants' videogame.

### 3. Defendants' First Amendment Rights Are Not a Defense to the Unauthorized Use of Miller's Image

Section 43(a) of the Lanham Act is based in the protection from consumer confusion from misleading endorsements and is balanced against the public's First Amendment interest in free expression. *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d

Cir.1989). Section 43(a) will be applied if the use of the unauthorized use of person's likeness has no artistic relevance to the underlying work. *Id*. at 999. The Ninth Circuit has adopted the "*Rogers* test" in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir.2002). In *Rogers,* movie producers used the names of Fred and Ginger Rogers in the title of a movie. And the "*Rogers* test" was formulated as a balance of the First Amendment rights provided to creative works and the right of a celebrity to control the commercial exploitation of their name and likeness. *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, 724 F.3d 1268, 1273, 107 U.S.P.Q.2d 1629 (9th Cir. 2013). The Second Circuit was concerned that:

> many titles with a celebrity's name make no explicit statement that the work is about that person in any direct sense; the relevance of the title may be oblique and may become clear only after viewing or reading the work. As to such titles, the consumer interest in avoiding deception is too slight to warrant application of the Lanham Act.

*Rogers,* 875 F.2d 999. It is within this context that the Second Circuit required that the false endorsement be "explicitly misleading." The facts in the instant matter could not be more distinct from the facts in *Rogers*.

      Here, Miller is a world-class professional skateboarder, who's likeness is frequently used in promotional videos and marketing materials by third-parties to endorse their products. (Miller Declaration, ¶¶ 3-6). Defendants knowingly and willfully used Miller's likeness, without his consent, in a skateboarding videogame and promotional material, resulting in third-parties confused as to his association and endorsement of the *Skater XL* videogame. This is as close to a textbook definition of "explicitly misleading" as one can get. When a celebrity likeness is used, without the celebrity's consent, in the promotion of a third-party's product, a likelihood of consumer confusion as to endorsement exists. *Waits*, at 1111.

      While actual consumer confusion is not required to prove that a likelihood of consumer confusion exists, it is one of the eight factors that make up the *Sleekcraft*

test. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9 Cir. 1979). The *Sleekcraft* test has been applied in cases of false endorsement. "In several past cases involving celebrity plaintiffs we have looked to our decision in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979), for the appropriate factors to consider in determining whether there exists a likelihood of confusion." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001). In the within matter Miller received numerous messages from unknown third-parties, brief acquaintances and friends of Miller, alike, all recognizing that Miller's likeness was used for a character in the videogame and it is reasonably presumed that he was associated with the videogame and endorsed it. (Miller Declaration, ¶¶ 14 and 15). Actual consumer confusion resulted from Defendants' unauthorized use of Miller's likeness.

Defendants cite *Brown v. Electronic. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013), as an example when the court, using the *Rogers* test found that the alleged false endorsement claim was insufficient to be deemed "explicitly misleading." *Brown*, at 1239. In contrast to the within matter, the defendant only used the plaintiff's player statistics in its videogame. Here, Miller's likeness is used on one of five professional skateboarding characters in the videogame, and in countless *Skater XL* promotional images. (Complaint, ¶ 11).

Defendants also claim that Miller made false allegations in his Complaint, this is clearly not true. As stated above Miller received messages regarding his appearance in the Skater XL videogame from unknown third-parties, brief acquaintances and friends of Miller. (Miller Declaration ¶¶ 14 and 15). Above the images, of a couple of the Instagram Stories that Miller saved, the Complaint states, "Below are just two of the many messages and tags Plaintiff received." (Complaint ¶ 12). One of the Instagram Stories was from "Cyrus," a person Miller knew from the skatepark and with whom Miller has had no contact for two years. (Miller Declaration, ¶ 14). The other was from a friend of Miller's, whose younger brother

had identified Miller in the *Skater XL* videogame. (*Id.*, ¶ 15). Nowhere does Miller claim that the two example, included in his Complaint, of Instagram Stories tags, were from complete strangers. Defendants conveniently ignore the fact that numerous other third-parties also tagged Miller being in the game, in their Instagram Stories.

Defendants again are incorrect in applying the holding found in *Jack Russel Terrier Network of Northern Ca. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005), claiming that, "Only plaintiffs who can establish competitive commercial injury have standing to bring such claims." (Easy Day's Motion to Dismiss, Dkt. 13-1, P. 6). The court in *Jack Russel Terrier Network of Northern Ca.* distinguished the facts before it and matters involving "false association."

> We have said that different causes of action alleged pursuant to the different subsections of 15 U.S.C. § 1125(a) have different standing requirements. Barrus, 55 F.3d at 469–70. *Smith* and *Waits* involved the "false association" prong of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), under which a plaintiff need only allege commercial injury based upon the deceptive use of a trademark or its equivalent to satisfy standing requirements. *Id*. **That the parties be competitors "in the traditional sense" is not required**.

*Jack Russel Terrier Network of Northern Ca.*, at 1037 (emphasis added). Clearly the Ninth Circuit does not require plaintiffs making a false endorsement/false association claim under 15 U.S.C. § 1125(a) to be competitors. Miller's false endorsement claims against Defendants are appropriate.

Defendants also cite *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111 (C.D. Cal. 2003) in support of their motion, however the facts in *Kournikova* could not be more distinct. "… Kournikova, the … internationally-known women's tennis player, brings suit against General Media Communications, Inc. ("GMC") for publishing in Penthouse Magazine partially nude photographs of another woman falsely identified as Kournikova." Kournikova claimed false advertisement and false endorsement. *Id.*, at 1113. In contrast, Defendants' use of

7
PLAINTIFF'S OPPOSITION TO DEFENDANT EASY DAY STUDIOS PTY LTD'S MOTION TO DISMISS

Miller's likeness is nearly identical to the other four professional skateboarders, who are associated and are endorser of *Skater XL*. The Ninth Circuit has repeatedly found that an endorser of products, which Miller clearly is, can make a false endorsement claim under the Lanham Act when an endorsement is implied by the unauthorized use of that person's likeness. *Fifty-Six Hope Rd. Music, Ltd.* at 1068.

### C. Punitive Damages Are Available for the California Statutory and Common-Law Claims

In matters involving the unauthorized use of one's publicity rights an injured party may be awarded punitive damages. Cal. Civ. Code § 3344(a). In federal courts, the Federal Rules of Civil Procedure provide for the standard required in the pleadings. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273–74 (N.D. Cal. 2015).

> Although Section 3294 provides the governing substantive law for punitive damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure—the provisions governing the adequacy of pleadings in federal court.

*Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D.Cal.2000). As discussed above (see P. 2) the requirements pleadings in federal court is to provide "fair notice" to the defendants. *Iqbal*, at 688.

Federal courts have reached different conclusions as to what is required for pleadings in federal court regarding punitive damages under Cal. Civ. Code § 3344(b). *Rees*, at 274. Some courts have held that when viewing the facts most favorable to a plaintiff, courts can assume that management of a company authorized the alleged actions. *Shaterian v. Wells Fargo Bank, N.A.*, 829 F.Supp.2d 873, 888–89 (N.D.Cal.2011). In the within matter we do not have to assume that a manager approved the unauthorized use of Miller's likeness. Easy Day's Director, Dain Hedgpeth confirms that Easy Day willfully and knowingly used Miller's likeness when Miller only agreed to be "scanned wearing various articles of clothing…" (Hedgpeth Declaration ¶ 6). The Complaint is sufficiently pled to provide Defendants notice of Miller's claims.

Further, the Ninth Circuit has held that "Rule 12(f) of the "Federal Rule of

Civil Procedure does not authorize striking damages claim on ground that claim is precluded as matter of law." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir.2010). "[S]triking a party's pleadings is an extreme measure, and, as a result, ... '[m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.'" *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir.1977)).

**D.   Foreign Companies Transacting Business Within California Must Register with the Secretary of State**

Upon an investigation it was discovered that Easy Day, an Australian proprietary limited company, was conducting business within California without registering with the California Secretary of State. "A foreign corporation shall not transact intrastate business without having first obtained from the Secretary of State a certificate of qualification." Cal. Corp. Code § 2105(a)[1]. Section 2105 requires that a foreign company, when registering with the California Secretary of State, provides an agent for service of process within the state. Cal. Corp. Code § 2105(a)(5). As a result of Easy Day's failure to register, Miller was required to "take appropriate actions," meaning Miller had to go to the great length of serving Easy Day in Australia. (M. Miller, Esq. Declaration ¶ 7). Miller's counsel did not threaten to, "'take appropriate actions' with the California Secretary of State" as falsely claimed by Easy Day's counsel (Motion to Dismiss, Dkt. 13-1, P. 8 citing Hedgpath Declaration Ex. 1). Easy Day's counsel clearly is misrepresenting an easily ascertainable fact. This fantastical claim is just another example of Easy Day's continued delay tactics and a waste of time and judicial resources. At no time did Miller's counsel threaten Easy Day with "administrative charges." (M. Miller, Esq. Declaration ¶ 8).

---

[1] It should be noted that Easy Day, as of the date of this filing, has still not registered with the Secretary of State.

9
PLAINTIFF'S OPPOSITION TO DEFENDANT EASY DAY STUDIOS PTY LTD'S MOTION TO DISMISS

## IV. CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion to strike.

Dated: March 1, 2021                LAW OFFICES OF MATTHEW MILLER


By: _____*/s/ Matthew Miller*_____
Matthew Miller
Attorney for Plaintiff Zachary Miller