Robert S. Freund (SBN 287566)
ROBERT FREUND LAW
10866 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (323) 553-3407
Email: robert@robertfreundlaw.com

Attorneys for Defendant,
Easy Day Studios Pty Ltd

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY MILLER, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>EASY DAY STUDIOS PTY LTD, an Australian proprietary limited company; REVERB COMMUNICATIONS, INC., a California corporation; and DOES 1-25 INCLUSIVE,<br><br>          Defendants. | CASE NO.  3:20-cv-02187-LAB-DEB<br><br>**DEFENDANT EASY DAY STUDIOS PTY LTD'S REPLY IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16**<br><br>Date:     March 15, 2021<br>Time:    11:15 a.m.<br>Crtrm:   14A<br>Judge:   Hon. Larry A. Burns |

REPLY IN SUPPORT OF MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. REPLY ARGUMENT.....................................................................................................1

    A. The Opposition Confirms That Plaintiff's Claims Arise from Protected Activity in Connection with a Matter of Public Interest .............................................................1

    B. The Opposition Confirms That *Skater XL* Enjoys Full First Amendment Protection..................................................................................................................2

        1. The alleged use of Plaintiff's likeness was transformative on its face ............3

        2. *Skater XL*'s commercial value does not derive primarily from plaintiff's purported fame..................................................................................................5

    C. The Opposition Confirms That Plaintiff Consented to the Alleged Use of His Likeness....................................................................................................................7

    D. The Opposition Confirms That Any Use Was Incidental ........................................8

    E. The Opposition Confirms That Plaintiff Cannot Allege Injury ...............................9

    F. Attorneys' Fees Are Unavailaable to Plaintiff.......................................................10

III. CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Arenas v. Shed Media U.S. Inc.*,
  881 F. Supp. 2d 1181 (C.D. Cal. 2011) ................................................................6

*Branch v. Tunnell*,
  14. F.3d 449 (9th Cir. 1994) ................................................................................8

*Callahan v. Ancestry.com, Inc.*,
  2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .........................................................9

*Cher v. Forum Int'l, Ltd.*,
  629 F.2d 634 (9th Cir. 1982) ...............................................................................9

*Cohen v. Facebook, Inc.*,
  798 F. Supp. 2d 1090 (N.D. Cal. 2011) .............................................................10

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002) ...............................................................5

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
  724 F.3d 1268 (9th Cir. 2013) .........................................................................2, 4

*Mossack Fonseca & Co., S.A. v. Netflix Inc.*,
  2020 WL 8510342 (C.D. Cal. Dec. 23, 2020) .....................................................2

*Newton v. Thomason*,
  22 F.3d 1455, 1461 (9th Cir. 1994) .....................................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ...............................................................................1

*Rodrigues v. Kwok*,
  2014 WL 889570 (N.D. Cal. Mar. 3, 2014) .........................................................1

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ........................................................................2, 5, 7

*Sarver v. Hurt Locker LLC*,
  813 F.3d 891 (9th Cir. 2016) ...............................................................................6

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...............................................................................8

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
  814 F. Supp. 2d 1033 (S.D. Cal. 2011) ..............................................................10


Case 3:20-cv-02187-LAB-DEB   Document 20   Filed 03/08/21   PageID.265   Page 4 of 14

*William O'Neill & Co. v. Validea.com Inc.*,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002) ................................................................. 9

*Zhang v. Am. Franchise Reg'l Ctr.*,
  2016 WL 9137637 (C.D. Cal. July 20, 2016) ..................................................... 10

**State Court Cases**

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001) .......................................................................................... 6

*De Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845 (2018) .............................................................................. 6, 8

*Decker v. U.D. Registry, Inc.*,
  105 Cal. App. 4th 1382 (2003)) ......................................................................... 10

*Guglielmi v. Spelling-Goldber Prods.*,
  25 Cal. 3d 860 (1979) ........................................................................................... 5

*Kirby v. Sega of Am., Inc.*,
  144 Cal. App. 4th 47 (2006) ................................................................................. 3

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) ............................................................................. 3

*Stewart v. Rolling Stone LLC*,
  181 Cal. App. 4th 664 (2010) ............................................................................... 9

*Slivinsky v. Watkins-Johnson Co.*,
  221 Cal. App. 3d 799 (1990) ................................................................................ 9

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) .......................................................................................... 6

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................. 10

**Other Authorities**

S.D. Cal. Local Rule 7.1(h) ....................................................................................... 9


iii

REPLY IN SUPPORT OF MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16

## I. PRELIMINARY STATEMENT

Defendant Easy Day Studios Pty Ltd ("Easy Day") demonstrated that Plaintiff Zachary Miller's ("Plaintiff") state law publicity rights claims are fatally defective and should be stricken pursuant to California's anti-SLAPP statute. The Opposition confirms these points.

Because Plaintiff has not refuted that the alleged use of his likeness was transformative and not the primary driver of *Skater XL*'s commercial value, the First Amendment defeats Plaintiff's claims. Additionally, Plaintiff pleaded himself out of court by admitting he consented to the alleged use of his likeness. The Court may easily reject Plaintiff's sole argument that the alleged use was not incidental, which is based on a blatant misrepresentation of Easy Day's Director's declaration.

The Opposition also shows that Plaintiff cannot articulate any injury that can satisfy Article III's jurisdictional pleading requirements, let alone the elements of his claims. Finally, the Opposition cites to a handful of extraneous declarations throughout its recitation of facts, but Plaintiff cannot amend his Complaint through opposition briefing or attachments thereto,[1] and Easy Day's Motion challenged only the sufficiency of the Complaint and matters subject to judicial notice.[2]

## II. REPLY ARGUMENT

### A. The Opposition Confirms That Plaintiff's Claims Arise from Protected Activity in Connection with a Matter of Public Interest.

Plaintiff's claims are premised on Easy Day's alleged use of his likeness in the videogame *Skater XL*. The "public interest" requirement under the first prong of the anti-

---

[1] *See, e.g.*, *Rodrigues v. Kwok*, 2014 WL 889570, at *6 (N.D. Cal. Mar. 3, 2014) ("Statements made in an opposition brief cannot amend the complaint.").

[2] "[W]hen an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Nonetheless, in abundance of caution, Easy Day has concurrently filed evidentiary objections to the declarations submitted with Plaintiff's Opposition.

1  SLAPP statute is to be "broadly" construed, and it applies to expressive works, like
2  *Skater XL,* in which the public takes an interest. *Sarver v. Chartier (Chartier)*, 813 F.3d
3  891, 901 (9th Cir. 2016); *see also Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027,
4  1042 (2008) ("[T]he issue need not be 'significant' to be protected by the anti-SLAPP
5  statute—it is enough that it is one in which the public takes an interest.").

6        Plaintiff relies on *In re NCAA* for the proposition that Easy Day's activity falls
7  outside of the anti-SLAPP statute's scope because *Skater XL* "is not a publication of facts
8  about skateboarding," and therefore is not "a public interest." (Opp. at 9-10 [quoting *In*
9  *re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir.
10 2013)].) Plaintiff confuses the issues, citing a passage from *In re NCAA* addressing
11 Electronic Art's ("EA") news-reporting defense—a defense Easy Day has not raised.
12 But on the issue of whether EA's alleged conduct satisfied the "public interest"
13 consideration of the anti-SLAPP statute, the court held that it had. *See id.* at 1273
14 ("Keller does not contest that EA has made this threshold showing.").

15       Moreover, Plaintiff has alleged—and reiterated at length in the Opposition—that
16 he is famous and sought-after. (Complt. ¶ 8, 9; Opp. at 1-3 ["Miller has become well-
17 known;" "[b]ecause of his fame;" "considered a world-class skateboarder, who is highly
18 respected."].) While Easy Day disputes Plaintiff's fame, the Complaint's allegations,
19 bolstered by the Opposition's argument, satisfy the threshold anti-SLAPP inquiry. *See*
20 *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 667-68 (2010) ("[T]here is a public
21 interest which attaches to people who, by their accomplishments, … professional
22 standing or calling, create a legitimate and widespread attention to their activities.");
23 *Mossack Fonseca & Co., S.A. v. Netflix Inc.*, 2020 WL 8510342, at *3 (C.D. Cal. Dec.
24 23, 2020) (film satisfied public interest prong because plaintiffs were "well known").

25     **B.**    **The Opposition Confirms That *Skater XL* Enjoys Full First Amendment**
26           **Protection.**

27       Easy Day demonstrated that its First Amendment rights preclude Plaintiff's
28 publicity rights claims because (1) the alleged use of Plaintiff's likeness was

transformative, and (2) the economic value of *Skater XL* is not derived primarily from the alleged use of Plaintiff's likeness. Plaintiff's Opposition confirms these points.

1. <u>The alleged use of Plaintiff's likeness was transformative on its face.</u>

The Opposition fails to refute (Opp. at 7-8) Easy Day's showing that Plaintiff alleges no more than that his likeness contributed only a "raw material" from which a generic skateboarder character was synthesized. *Kirby v. Sega of Am. Inc.*, 144 Cal. App. 4th 47, 58 (2006). Neither the Complaint nor the Opposition identifies *any* physical features shared by the generic skater and Plaintiff, apart from both presenting as Caucasian males. (Complt. ¶ 10; Mtn. at 11.) In *Kirby*, a videogame character was found to be transformative because it featured a different hairstyle and costume from the plaintiff, and was therefore "unlike any public depiction" of her. Here, Easy Day showed that the generic skater as depicted in Plaintiff's Complaint—let alone in the infinitely variable ways that the generic skater is customized by players in the game—has different eye color, hair color, and hairstyle from Plaintiff. (Complt. ¶ 10; Mtn. at 11.) In other words, even when rigging the game to force a resemblance to showcase in the Complaint, Plaintiff cannot recreate himself in *Skater XL* to mimic any public depiction.

Plaintiff's Complaint and Opposition establish that the generic character is so unlike any depiction of Plaintiff that he can never offer evidence that anyone has recognized him in the game, aside from two people whom he has known personally for years. Specifically, Plaintiff admits that the only two examples he can muster of anyone recognizing him in *Skater XL* **just so happen to be from individuals who knew him personally**, flatly refuting Plaintiff's allegations that those "messages and tags" shown in the Complaint came from "third parties unknown to Plaintiff." (*Compare* Opp. at 4-5 [explaining both tags identified in the Complaint were from friends and acquaintances], *with* Complt. ¶ 12.) Plaintiff further admits that he could never present any other evidence of recognition, because that supposed evidence no longer exists. (Opp. at 4-5 [explaining that Plaintiff only captured two of "numerous" Instagram Stories purportedly identifying him in *Skater XL* and all other Stories have disappeared].)

  The Opposition relies heavily on *In re NCAA* for the proposition that because the generic character is shown skateboarding, and because Plaintiff is a skateboarder, there can be no transformative use.  (Opp. at 7.)  But this case is not like *In re NCAA*—not even close—and Plaintiff's argument warps *In re NCAA* beyond recognition.

  In *In re NCAA*, college football player Samuel Keller sued game developer EA for using his likeness in a videogame that "allow[ed] users to control avatars representing college football players" and that sought "to replicate *each school's entire team as accurately as possible*."  724 F.3d 1268, 1272 (9th Cir. 2013) (emphasis added).  Keller's corresponding videogame character was the "starting quarterback for Arizona State [and] *wears number 9, as did Keller, and has the same height, weight, skin tone, hair color, hair style, handedness, home state, play style (pocket passer), visor preference, facial features, and school year as Keller*."  *Id.* (emphasis added).

  Here, *Skater XL*'s generic character shares no similar identifying characteristics with Plaintiff.  Plaintiff does not contest that the character has no team affiliation or number, no biographical background such as home state or school year, and no biometric information such as weight or height, and its skin tone, hair color, and hair style can all be infinitely customized.  (Dkt. 12-2 [RJN] ¶ 1.)  And Plaintiff has submitted a declaration complaining about being ***shown "promoting" teams other than those he endorses in real life*** in *Skater XL*, flipping the concern in *In re NCAA* on its head.  (Dkt. 18-3 [Hosoi Decl.] ¶ 4 & Ex. 1.)

  Furthermore, unlike Keller's avatar in *In re NCAA*, the Complaint never alleges that *Skater XL* depicts Plaintiff doing what he claims to be known for in real life, *i.e.*, halfpipe or "transition" skateboarding.[3]  In *In re NCAA*, Keller and his avatar played quarterback, and that avatar could not be changed to play kicker or any other position.

---

[3] Professional skateboarders focus on and develop renown for one of two distinct disciplines of skateboarding.  They either skate "street," which refers to performing tricks off of objects found in street settings, such as handrails, ledges, and stair sets, or they skate "vert" or "transition," which refers to performing tricks on a halfpipe ramp.

1 | Here, in every image depicting Plaintiff skateboarding in the Complaint, he is shown in
2 | the act of *transition* skateboarding in a halfpipe. (Complt. ¶ 8.) A declaration submitted
3 | by Plaintiff further specifies that Plaintiff is "a world-class *transition* skateboarder."
4 | (Dkt. No. 18-4 [Brittain Dec.] ¶ 3 [emphasis added].) In contrast, the Complaint alleges
5 | that Plaintiff is depicted in *Skater XL* doing what he might do "**in a parallel universe**"
6 | where he "skates *street*," acknowledging that Plaintiff is *not* known for performing that
7 | activity in real life. (Complt. ¶ 12 [emphasis added].) Unlike Keller's avatar, who could
8 | only play quarterback for Arizona State in the NCAA game, *Skater XL* players who
9 | select the generic character have complete control and discretion over how and where to
10 | skate and which team's gear to wear. (*See* Dkt. 12-2 [RJN] ¶ 1.)

Plaintiff's argument is akin to a NASCAR driver alleging that a generic male driver in a Formula 1 video game infringes his publicity rights simply because both activities involve race cars. Such argument bends the *In re NCAA* holding far beyond the breaking point and cannot strip Easy Day of its First Amendment protections. Moreover, following *In re NCAA*, the Ninth Circuit has confirmed that expressive works, like videogames, are "speech that is fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays." *Chartier*, 813 F.3d at 905; *see also Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) ("Under the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional.'") (quoting *Guglielmi v. Spelling-Goldber Prods.*, 25 Cal. 3d 860 (1979)).

    2.    <u>*Skater XL*'s commercial value does not derive primarily from plaintiff's purported fame.</u>

The Opposition fails to meaningfully address Easy Day's argument that Plaintiff's publicity rights claims are barred because the success of *Skater XL* is not derived *primarily* from Plaintiff's alleged appearance in the game. (Mtn. at 12-13.) Specifically,

Easy Day's Motion established that where, as here, "the marketability and economic value of the challenged work do *not* derive primarily from the celebrity's fame, 'there would generally be no actionable right of publicity.'"[4] *Winter v. DC Comics*, 30 Cal. 4th 881, 889 (2003) (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387 (2011) (emphasis added). The inquiry of whether the likeness is the *primary* driver of the work's economic value is not to be applied only in "close cases," as the Opposition argues. (Opp. at 8.) Instead, it establishes a presumption in favor of the defendant in all cases. *See Comedy III*, 25 Cal. 4th at 407 ("When the value of the work comes principally from some source other than the fame of the celebrity … it may be presumed that sufficient transformative elements are present to warrant First Amendment protection.").

The presumption amply applies here. If the likeness of any skateboarders contributed to the success of *Skater XL*'s sales, it was surely those four skateboarders who *are* identified by name and not Plaintiff, who alleges he contributed to the nameless, generic avatar. *Skater XL* may be primarily about skateboarding, but it is not primarily about Plaintiff. The First Amendment therefore bars Plaintiff's claims as a matter of law. *See Sarver v. Hurt Locker LLC*, 2011 WL 11574477, at *7 (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Chartier*, 813 F.3d 891 ("Whatever recognition or fame Plaintiff may have achieved, it had little to do with the success of the movie. Thus, Plaintiff's claim is barred by the First Amendment as a matter of law."); *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1191 (C.D. Cal. 2011) (dismissing NBA player's publicity rights claim for use of his likeness in reality show and finding transformative use because "any references in *BWLA* to Arenas will be incidental to the show's plot as a whole"); *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 864 (2018) (concluding as matter of law that film's "'marketability and economic value' does not 'derive primarily

---

[4] The Opposition urges the Court to adopt a new test—whether the plaintiff's likeness "adds commercial value to the work." (Opp. at 8.) Even if that were the test, the claims would still fail because Plaintiff's Complaint does not allege that his likeness added commercial value.

from [plaintiff's] fame' but rather 'comes principally from … the creativity, skill, and reputation' of [its] creators") (quoting *Comedy III*, 25 Cal. 4th at 406).

Plaintiff again erroneously invokes *In re NCAA* when he rhetorically asks why Easy Day would have contracted with Plaintiff if it "did not think there was value in using a highly regarded professional skateboarder." (Opp. at 9.)  A cursory review of *Skater XL* reveals that Easy Day went out of its way to make sure it did *not* make the generic character recognizable, while making sure the four professional skateboarders featured in the game *were* readily identifiable by name.  And after *In re NCAA* was decided, the Ninth Circuit clarified that in the publicity rights context, "the state's interest is in preventing 'the exploitation of celebrity to sell products, and an attempt to take a free ride on a celebrity's value.'" *Chartier*, 813 F.3d at 905 (quotation omitted).

C.   **The Opposition Confirms That Plaintiff Consented to the Alleged Use of His Likeness.**

The Complaint and text messages central thereto allege that Plaintiff was paid for the work he agreed to do and consented to the appearance of the generic character that he modeled for as it exists in *Skater XL*.  (Complt. ¶ 10; Mtn. at 14-15.)  The Opposition sums up the situation perfectly:  "***The actions of Defendants are consistent with the agreement entered into by the parties***, *i.e.*, that Defendants would only use the scans of the clothing and would not use his likeness in the game." (Opp. at 11 [emphasis added].)  That is exactly right: Easy Day did *not* make a character that infringes on Plaintiff's likeness.  To borrow Plaintiff's own words, it is "revealing" that Easy Day did not request or receive "permission to use [his] likeness"—because his likeness was not used.  (*Id.*)

Nonetheless, Plaintiff gave permission for the alleged use about which he now complains.  No reasonable trier of fact could conclude otherwise.  To recap: Plaintiff asked what "the character of me [was] gonna be used for in the game." (Dkt. 12-3 [RJN] ¶ 2.)  He was accurately told that it would be the "generic guy" and "won't have your

name anywhere or anything if you're worried about that." Plaintiff responded, "sweet," and was enthusiastic about recognizing "my face" on the character. (*Id.*)

None of those facts are disputed, and they are set forth in documents alleged in the Complaint. (Complt. ¶10 [quoting from "text message" attached to Goforth Declaration].) Just like the plaintiff in *Newton v. Thomason* (which Plaintiff does not attempt to distinguish), although Plaintiff "never uttered the words, 'I consent,' it is obvious that he did consent." 22 F.3d 1455, 1461 (9th Cir. 1994). By granting objective consent, Plaintiff has pleaded himself out of court.[5] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) ("[A] plaintiff can … plead himself out of a claim by including unnecessary details contrary to his claims."); *Branch v. Tunnell*, 14. F.3d 449, 453-54 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint … may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

### D. The Opposition Confirms That Any Use Was Incidental.

Easy Day's Motion established that any alleged use of Plaintiff's likeness was incidental at most, because the generic skater avatar has no unique quality that contributes anything of significance or value, and because the alleged resemblance to Plaintiff does not feature prominently in the game. (Mtn. at 16-17.) In response, Plaintiff argues that "Easy Day has gone to great lengths to replicate the likeness of Miller and the four other professional skaters." (Opp. at 13.) The Opposition's attempted rebuttal fails for at least three reasons.

First, Easy Day replicated the likeness of the four other skaters, whose names are featured in *Skater XL*'s advertisements. If Plaintiff's proffered version of the facts were accurate, why would Easy Day attempt to capitalize on the value of those four other

---

[5] It is also irrelevant that Plaintiff claims he did not approve the alleged use of his likeness and that releases may be the industry norm. "[T]he First Amendment simply does not require such acquisition agreements." *De Havilland*, 21 Cal. App. 5th at 861 (noting "industry custom of obtaining 'clearance' establishes nothing, other than the unfortunately reality that many filmmakers may deem it wise to pay a small sum up front for a written consent to avoid later having to spend a small fortune to defend unmeritorious lawsuits such as this one").

skaters' identities, but not Plaintiff's?  The answer is, of course, because Plaintiff's likeness is not used in *Skater XL*, and any passing resemblance is incidental at best.

Second, realizing he has not and cannot truthfully allege that Easy Day went to "great lengths" to replicate his likeness, Plaintiff misreads Dain Hedgpeth's declaration to say what Plaintiff wishes the Complaint could say, hoping that the Court will not notice.  (Opp. at 13 [erroneously citing Hedgpeth Decl., ¶ 3].)  The cited paragraph actually says nothing about lengths taken to replicate anyone's likeness: "Combining technically advanced computer software engineering and creative audiovisual elements, *Skater XL* offers a realistic 'sandbox' environment in which to master skateboarding tricks and hone their own expressive skating style." (Hedgpeth Decl., ¶ 3.)  Hedgpeth's statement, summarizing *Skater XL* (which is judicially noticeable), is accurate.

Finally, Plaintiff claims that the promotional materials for *Skater XL* do not enjoy First Amendment protection.  (Opp. at 14.)  But Ninth Circuit precedent "makes clear that, to the extent this advertising is 'merely an adjunct of the protected publication and promotes only the protected publication,' it is entitled to First Amendment protection to the same extent as the underlying publication." *William O'Neill & Co. v. Validea.com Inc.*, 202 F. Supp. 2d 1113, 1120 (C.D. Cal. 2002) (quoting *Cher v. Forum Int'l, Ltd.*, 629 F.2d 634 (9th Cir. 1982)).

### E. The Opposition Confirms That Plaintiff Cannot Allege Injury.

As explained in Easy Day's concurrently filed reply in support of its motion to dismiss and incorporated herein by reference,[6] Plaintiff's conclusory allegations about his deprivation "of valuable rights of publicity" and harm to third parties (Opp. at 5) are insufficient to satisfy Article III's jurisdictional requirement of injury, let alone adequately plead the elements of his claims.  "Resulting injury is the *sine qua non* of a cause of action for misappropriation of name." *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990).  The Court should strike or dismiss the entire Complaint

---

[6] Easy Day incorporates the injury discussion here to comply with Local Rule 7.1(h) and to further the interest of judicial economy.

because its conclusory allegations about injury are insufficient. *See Callahan v. Ancestry.com, Inc.*, 2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) (allegations about "lost potential earnings from the commercial use of their likeness" did not establish standing); *Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing publicity rights claims where "plaintiffs' sole allegation relating to injury is the conclusory allegation … that they 'have suffered injury-in-fact by having their name[s] and likeness[es] misappropriated without their knowledge or consent'").

### F. Attorneys' Fees Are Unavailable to Plaintiff.

Plaintiff claims he is "presumed entitled to reasonable attorneys' fees" if he is the prevailing party on the anti-SLAPP motion. (Opp. at 14.) Not so. Only a prevailing *movant* is entitled to fees. *See* Cal. Civ. Proc. Code § 425.16(c)(1) ("A prevailing defendant on a special motion to strike shall be entitled to recover … attorneys' fees."); *Zhang v. Am. Franchise Reg'l Ctr.*, 2016 WL 9137637, at *1 (C.D. Cal. July 20, 2016) (awarding fees to plaintiff who was prevailing movant against counterclaims).

A prevailing nonmovant may be awarded fees only where the anti-SLAPP motion is "frivolous or is solely intended to cause unnecessary delay." Cal. Civ. Proc. Code § 425.16(c). To satisfy that standard, the nonmovant must establish that "any reasonable attorney would agree such motion is totally devoid of merit." *Decker v. U.D. Registry, Inc.*, 105 Cal. App. 4th 1382, 1392 (2003). Here, because the anti-SLAPP motion is brought in conjunction with a motion to dismiss, even if Easy Day does not prevail, Plaintiff cannot recover fees. *See Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1039 (S.D. Cal. 2011) ("The anti-SLAPP motion is combined with a motion to dismiss. This indicates a good faith effort to dismiss Panda's counterclaim. Consequently, Panda is not entitled to fees and costs.").

### III. CONCLUSION

For the foregoing reasons, the Motion should be granted.

DATED:  March 8, 2021                    By   */s/ Robert S. Freund*
                                              Attorneys for Defendant
                                              EASY DAY STUDIOS PTY LTD

10

REPLY IN SUPPORT OF MOTION TO STRIKE PURSUANT TO C.C.P. § 425.16