UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ZACHARY MILLER, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>EASY DAY STUDIOS PTY LTD, an Australian proprietary limited company; REVERB COMMUNICATIONS, INC., a California corporation; and DOES 1-25 INCLUSIVE,<br><br>  Defendants. | Case No. 20cv02187-LAB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE;**<br><br>**(2) GRANTING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE;**<br><br>**(3) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; AND**<br><br>**(4) DENYING MOTION TO STRIKE.** |
|---|---|

Plaintiff Zachary Miller, a professional skateboarder, was paid by Defendants Easy Day Studios Pty Ltd ("Easy Day") and Reverb Communications, Inc. ("Reverb") (collectively, "Defendants") to assist in developing a video game, called *Skater XL*. Miller believed that the extent of his agreement with Defendants was to model various clothing outfits, which would then be captured by a technique called

photogrammetry and applied to a generic character in the video game. Miller alleges that he didn't consent to the use of his image or likeness in the game, yet one of the characters in it appears to be his exact replica.

Miller has sued Defendants, alleging unauthorized use of his image and likeness in the video game and its marketing and promotion. On January 15, 2021, Easy Day filed a Motion to Dismiss (Dkt. 13) and Motion to Strike the Complaint (Dkt. 12). Reverb joined in Easy Day's motions. (Dkt. 15–16.) The Court has read and considered the motion, opposition, and reply documents submitted in connection with these motions, and finds that Miller fails to state a claim under the Lanham Act. The Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** as moot Defendants' Motion to Strike.

## I. REQUEST FOR JUDICIAL NOTICE

In ruling on a Rule 12(b)(6) motion, courts generally may not look beyond the four corners of the complaint, with the exceptions of documents incorporated by reference into the complaint and any relevant matters subject to judicial notice. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Under the doctrine of incorporation by reference, courts may consider not only documents attached to the complaint, but also documents whose contents are alleged therein, provided the complaint "necessarily relies" on those documents or their contents, and the documents' authenticity and relevance are undisputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (internal citations omitted). This rule "prevent[s] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (alterations and internal quotation marks omitted).

Courts may also "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Proper subjects

of judicial notice include court records in a related litigation, *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), legislative documents, *see Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012), and publicly accessible websites, *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

### A. Defendants' Request

Defendants request that the Court take judicial notice of the following: (1) the contents of the *Skater XL* videogame; (2) text messages exchanged between Miller and Easy Day's Director of Marketing, Jeff Goforth; (3) screenshots on Instagram related to user "@cyread"; (4) screenshots on Facebook related to user "@tylurgrom"; and (5) *Skater XL*'s sales webpage on the Steam videogame platform. (Dkt. 12-2.) Miller doesn't dispute the authenticity of any of these items.

Here, Miller's claims center on the alleged inclusion of his image and likeness in the *Skater XL* video game. He refers to the contents of *Skater XL* and attaches various digital images from the video game within his Complaint. Because *Skater XL* is the focal point of Miller's entire Complaint and its contents as described in Paragraphs 3 through 5 of the Declaration of Dain Hedgpeth are undisputed, the Court **GRANTS** Defendants' request for judicial notice of *Skater XL*. *See Keller v. Elecs. Arts, Inc.*, No. C 09-1967 CW, 2010 WL 530108, at *5 n.2 (N.D. Cal. Feb. 8, 2010), *aff'd sub nom. In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268 (9th Cir. 2013) ("Because Plaintiff refers to the video games in his complaint, the Court GRANTS EA's request for judicial notice of them.").

The Court similarly **GRANTS** Defendants' request as to the text message exchange between Miller and Jeff Goforth included in the Declaration of Jeff Goforth. (Dkt. 12-4, Exs. 1–2.) Miller references this exchange in his Complaint (Dkt. 1 ("Compl.") ¶ 10), and necessarily relies on it for his allegations of Defendants' wrongdoing. *See Abe v. Hyundai Motor Am., Inc.*, No. SACV19699JVSADSX, 2019 WL 6647938, at *3 (C.D. Cal. Aug. 27, 2019) ("[T]he

Court grants Hyundai's request for judicial notice of the full text message exchange with Plaintiff, . . . as the FAC necessarily relies upon its contents.").

Defendants also seek judicial notice of two Instagram screenshots evincing Miller's connection to user "@cyread," as well as a Facebook post by Miller in which he tags user "@tylurgrom" in a photograph. (Dkt. 12-5 ("Freund Decl."), Exs. 1–3.) Defendants contend that because users "@cyread" and "@tylurgrom" are referenced in the Complaint, these exhibits are the proper subject of judicial notice. (Dkt. 12-2 ¶¶ 4–5.) But the specific screenshots and posts that Defendants ask the Court to judicially notice were never referenced or described in the Complaint. Defendants cite to *Young v. Greystar Real Estate Partners, LLC*, No. 3:18-cv-02149-BEN MSB, 2019 WL 4169889, at *2 (S.D. Cal. Sept. 3, 2019), and *Wright v. Buzzfeed, Inc.*, No. 2:18-cv- 02187-CAS (AFMx), 2018 WL 2670642, at *1 n.1 (C.D. Cal. June 4, 2018), for the proposition that photographs and social media posts can be judicially noticed, but overlook the fact that those cases concerned photos and posts on social media that were specifically referenced and described in the complaint. *Young*, 2019 WL 4169889, at *2 ("Moreover, 'the complaint specifically describes the posts (and photograph) by reference to a social media caption . . ."); *Wright*, 2018 WL 2670642, at *1–2 (taking judicial notice of the disputed "subject photographs" in the complaint over which the plaintiff allegedly had a copyright and "were initially published on plaintiff's Instagram account"). Nor are these screenshots and posts "generally known within the trial court's territorial jurisdiction" or capable of "accurate[ ] and read[y] determin[ation] from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court **DENIES** Defendants' request as to these exhibits.

Finally, the Court **GRANTS** Defendants' request for judicial notice of the *Skater XL* sales webpage on the Steam website. Miller doesn't oppose this request or otherwise contend that the document is inaccurate. *See Pac. Overlander, LLC v. Kauai Overlander*, No. 18-cv-2142-KAW, 2018 WL 3821070, at *2 (N.D. Cal.

Aug. 10, 2018) ("[I]n general, websites and their contents may be judicially noticed."); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965–66 (C.D. Cal. 2005) (taking judicial notice of the contents of Amazon.com web pages describing books related to the case).

### B. Miller's Request

In his Opposition, Miller requests that the Court take judicial notice of various screenshots from Easy Day's and Reverb's respective websites. (Dkt. 18-6 ¶¶ 1–3; Dkt. 18-2, Exs. 1–3.) Public websites are the proper subjects of judicial notice if their contents are related to the disputed issues and their authenticity is not in question. *See Caldwell v. Caldwell*, 2006 WL 618511, at *4 (N.D. Cal. 2006) ("The court agrees with the proposition that, as a general matter, websites and their contents may be proper subjects for judicial notice."). The Court **GRANTS** Miller's request for judicial notice of Exhibits 1 through 3 of the Declaration of Matthew Miller.

## II. BACKGROUND

Miller is a "well-known professional skateboarder and has been for over thirteen (13) years." (Compl. ¶ 8.) Throughout his career, he has been hired to "appear[ ] in promotional campaigns and magazine editorial photographs" for various high-profile companies, including Quicksilver, DC Shoes, and Nixon. (*Id.* ¶¶ 8–9.) In April 2019, Defendants proposed to Miller that he model different clothing outfits for motion capture and use in a skateboarding-themed video game. (*Id.* ¶ 10.) Defendants explained that the motion capture was for a "generic" character in the video game that wouldn't resemble Miller or have any identifiable characteristics. (*Id.*) Defendants assured Miller that the video game "won't have your name anywhere or anything if you're worried about that." (*Id.*) On July 13, 2019, following the motion capture session, Easy Day's Director of Marking, Jeff Goforth, asked Miller via text message about his height, explaining that he "[j]ust need[ed] to make sure the scaling of the character is correct." (Dkt. 12-4, Ex. 2.)

1  Miller responded that his height is 5'8" and asked, "What does it look like? Haha,"
2  to which Mr. Goforth responded, "Thanks man. Let me see if I can get a screenshot
3  for you." (*Id.*) Defendants paid Miller two hundred and fifty dollars for his work.
4  (Compl. ¶ 10.)

5  Defendants' video game, named *Skater XL*, was released a short time later.
6  (Compl. ¶ 11.) In the game, users can simulate skateboarding tricks and
7  techniques in a realistic skateboarding environment. (Dkt. 12-3 ¶ 3.) Users can
8  select to play as one of five different skater characters, including as professional
9  skateboarders Tiago Lemos, Evan Smith, Tom Asta, and Brandon Westgate, as
10 well as a nameless "generic" skater avatar. (*Id.* ¶ 4.) The first four characters are
11 explicitly identified by name and image in the game, while the latter generic
12 character has no name or identifying characteristics. (*Id.*) This generic character
13 can be customized according to user preference, including customizing its gender,
14 race, hair color, clothing, and accessories. (*Id.*)

15 On November 9, 2020, Miller sued Defendants for the use of his image and
16 likeness in *Skater XL* without his consent, asserting that the "generic" avatar is not,
17 in fact, generic, but rather an "exact copy of Plaintiff." (*Id.* ¶ 10.) And despite
18 Defendants' assurances that the avatar would look nothing like him, Miller alleges
19 that the character is easily identifiable as him. (*Id.* ¶ 12.) The Complaint alleges
20 the following four causes of action: (1) False Endorsement, 15 U.S.C. § 1125(a);
21 (2) False Advertising, 15 U.S.C. § 1125(a); (3) Violation of Cal Civ. Code § 3344;
22 (4) Violation of Common Law Right of Publicity. Defendants have moved to dismiss
23 Miller's first and second causes of action under the Lanham Act, and to strike his
24 third and fourth causes of action for statutory and common law right of publicity.

25 **III.   LEGAL STANDARD**

26 A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*,
27 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint
28 must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court need not accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### IV.  MOTION TO DISMISS

#### A. Notice Requirements of Rules 8(a) and 9(b)

As a general rule, when a complaint fails "to allege what role each [d]efendant played in the alleged harm," this "makes it exceedingly difficult, if not impossible, for individual [d]efendants to respond to [p]laintiffs' allegations." *In re iPhone Application Litig.,* No. 11–MD–02250–LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). "[A] complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (quoting *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) (internal quotation marks omitted). However, claims that are collectively asserted against "Defendants" are not automatically deficient. *Id.* Instead, the Complaint must identify the respective wrongdoing of each defendant "without resort to generalized allegations against Defendants as a whole." *Id.* (quoting *In re iPhone*, 2011 WL 4403963, at *3).

Additionally, a plaintiff's claims are governed by Rule 9(b) if those claims sound in fraud. *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1102 (9th Cir. 2003). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or mistake." To meet Rule 9(b)'s requirements, a complaint alleging fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985); *Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (internal citation omitted). Courts in the Ninth Circuit regularly apply Rule 9(b) to Lanham Act claims. *See, e.g.*, *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-CV-06721-JCS, 2019 WL 3779197, at *4 (N.D. Cal. Aug. 12, 2019) (internal citations and quotation marks omitted) ("[T]he majority of district courts within the Ninth Circuit have extended the Ninth Circuit's application of Rule 9(b) pleading standards in *Kearns* and *Vess* to false advertising claims under the Lanham Act."); *Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, No. 16CV2594-JAH (KSC), 2018 WL 1524499, at *4 (S.D. Cal. Mar. 28, 2018) ("[T]here is an abundance of relevant and persuasive case law standing for the proposition that Rule 9(b) should be applied to Section 43 claims when they are 'grounded in fraud.'"); *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("As to this threshold matter, the Court agrees with the weight of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud.").

Here, Defendants argue that Miller's entire Complaint should be dismissed under Rule 8(a) because it refers to them collectively as "Defendants" in each of the allegations and makes no distinction as to their respective actions or alleged wrongdoing. (Dkt. 13-1 at 3.) In this case, "Defendants" include both Easy and Reverb. Easy Day is an Australia-based company that allegedly develops, publishes, and sells *Skater XL* (Compl. ¶ 6.), while Reverb is a California-based company that allegedly distributes, publishes, and markets *Skater XL*. (*Id.* ¶ 7.) Miller has sued both for their alleged "unauthorized use and commercial

exploitation of the likeness and other identifying attributes of Plaintiff in a video game." (*Id.* ¶ 1).

In his Opposition to the Motion to Dismiss, Miller argues that the Complaint doesn't impermissibly lump Defendants together in the pleadings and both parties have received fair notice of their alleged wrongdoing. Miller argues that Reverb's status as a publisher of *Skater XL*, like Easy Day, means that both parties are responsible for the content of the video game. (Dkt. 19 at 2.) Construing the pleadings in the light most favorable to Miller, the Court agrees. Although Defendants are referred to collectively as "Defendants" throughout the Complaint, the Complaint is clear that both entities are responsible for the publication of *Skater XL*. (Compl. ¶¶ 6–7.) Here, the gravamen of Miller's allegations is that Defendants—both Easy Day and Reverb—published a video game with a character that looks just like him without his consent. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 965 (N.D. Cal. 2015) ("Put another way, the gravamen of Adobe's allegations in the instant lawsuit are that all the Defendants infringed on Adobe's trademarks and copyrights . . ."). Because both Defendants are responsible for publishing the contents of the game, and Miller's claims all center around this alleged harm, the allegations are sufficient to provide proper notice.

Miller's Complaint also satisfies the Rule 9(b) requirement of pleading allegations of fraud with particularity. *See Vess*, 317 F.3d at 1106. As previously discussed, Miller sufficiently alleges "who" was responsible for the alleged misconduct, and the fact that the Complaint refers to both Defendants collectively does not mean the claims automatically fail. Furthermore, the Complaint sufficiently alleges "how" Defendants carried out the purported fraud. The Complaint details the parties' agreement, how Miller's image was motion captured, and how his image and likeness were ultimately used on a character in *Skater XL* without his consent. (Compl. ¶¶ 8–12.)

The Court **DENIES** Defendants' Motion to Dismiss for failure to satisfy Rules 8(a) and 9(b).

### B. Lanham Act Claims, 15 U.S.C. § 1125(a)

Miller's first and second causes of action are for false endorsement and false advertising under Section 43(a) of the Lanham Act, as codified in 15 U.S.C § 1125(a). He alleges that Defendants "have made false and misleading statements of fact in commercial advertising efforts in connection with the promotion" of *Skater XL* (Compl. ¶ 29), and that Defendants' "unauthorized uses of Plaintiff's persona [are] likely to confuse and deceive consumers as to Plaintiff's sponsorship and/or endorsement" of the game (*id.* ¶ 23).

The purpose of the Lanham Act is to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act provides, in relevant part:

> **(1)** Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C § 1125(a)(1). There are two bases of liability created under Section 1125(a): false association under § 1125(a)(1)(A), and false advertising under § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). The Ninth Circuit recognizes a cause of action for false endorsement as one type of false association claim. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992), *abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. 118 (2014) ("A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim . . ."). Defendants move to dismiss the false endorsement and false advertisement claims.

### i. False Endorsement

Courts recognize false endorsement claims "brought by plaintiffs, including celebrities, for the unauthorized imitation of their distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'" *Waits*, 978 F.2d at 1106. The Lanham Act "prohibits only false endorsement, not mere use of an image or name." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 28:14 (4th ed. 1996)). In other words, not all uses of a celebrity's image or likeness are actionable under § 1125(a)—only those which "suggest sponsorship or approval are prohibited." *Id.* The key inquiry for a false endorsement claim is whether the unauthorized use of the plaintiff's distinctive attributes is "likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Id.* at 1110. This means "show[ing] more than simply a possibility of confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

The Ninth Circuit applies an eight-factor test modeled after the factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), in determining whether there exists a likelihood of confusion in celebrity cases. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001). These factors include:

1. Strength of the plaintiff's mark;

  2. Relatedness of the goods;

  3. Similarity of the marks;

  4. Evidence of actual confusion;

  5. Marketing channels used;

  6. Likely degree of purchaser care;

  7. Defendant's intent in selecting the mark; and

  8. Likelihood of expansion of the product lines.

*AMF, Inc.*, 599 F.2d at 348-49. "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case." *Downing*, 265 F.3d at 1008. Defendants don't address the *Sleekcraft* factors, but instead argue the merits of whether there is a likelihood of consumer confusion and ask the Court to resolve that issue.

  Here, Defendants contend that Miller can't maintain a claim for false endorsement under the Lanham Act because his claim doesn't meet the test set forth by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989), and later adopted by the Ninth Circuit. *See Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018) ("We have adopted the Second Circuit's *Rogers* test to strike an appropriate balance between First Amendment interests in protecting artistic expression and the Lanham Act's purposes to secure trademark rights."). For the *Rogers* test to apply, Defendants must "make a threshold legal showing that [their] allegedly infringing use is part of an expressive work protected by the first amendment." *Dickinson v. Ryan Seacrest Enterprises Inc.*, 839 F. App'x 110, 111 (9th Cir. 2020) (quoting *Gordon*, 909 F.3d at 264) (internal quotations omitted). Here, Defendants correctly contend, and Plaintiff doesn't dispute, that videogames such as *Skater XL* are expressive works subject to constitutional protection under the First Amendment. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011) ("California correctly acknowledges that video games qualify for First

Amendment protection."); *Brown v. Elec. Arts, Inc.* ("*Brown II*"), 724 F.3d 1235, 1241 (9th Cir. 2013) ("[T]he Supreme Court has answered with an emphatic 'yes' when faced with the question of whether video games deserve the same protection as more traditional forms of expression.").

Under the *Rogers* test, Miller must then meet his burden of demonstrating that Defendants' use of the mark either: (1) is not artistically relevant to the underlying work, or (2) explicitly misleads consumers as to the source or content of the work. *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020). "Neither of these prongs is easy to meet." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).

The first prong requires that "the level of relevance must merely be above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1100 (9th Cir. 2008); *see Brown II*, 724 F.3d at 1245 ("The *Rogers* test is applicable when First Amendment rights are at their height—when expressive works are involved—so it is no surprise that the test puts such emphasis on even the slightest artistic relevance."). The video game at issue here offers a virtual medium by which users can choose to play as one of various skateboarding characters to create and master skateboarding tricks in a realistic skateboarding environment. (Dkt. 12-3 ¶ 3.) Users can choose to play as one of four world-renowned skateboarders (Tiago Lemos, Evan Smith, Tom Asta, or Brandon Westgate), or they may select the generic, customizable avatar. (*Id.* ¶¶ 3–4.) The latter option functions as a creative outlet for users to customize the character as they see fit, including by choosing such aspects as the character's hair color, gender, and clothing apparel. (*Id.* ¶ 4.) Plaintiff alleges, however, that the generic character, which is "an almost exact copy of Plaintiff" (Compl. ¶ 11), "figur[es] prominently . . . as a main character in the Game" (*id.* ¶ 10). He acknowledges that "the videogame character bearing his likeness is performing the similar [*sic*] athletic actions for which he is known," and that, because the game endeavors to portray skateboarders in realistic

environments, "a player can literally have the Miller character skate in his home skatepark." (Dkt. 18 at 7.)

Creating a realistic skateboarding environment is central to the theme in *Skater XL*. And there can be no doubt that including the likeness of a real-life skateboarder in a video game seeking to simulate real-world skateboarders and skateboarding environments obviously has at least some artistic relevance to the work. *Brown II*, 724 F.3d 1235, 1243 (9th Cir. 2013); *see Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1199 (9th Cir. 2017) (holding that the defendant's use of the mark had "artistic relevance by supporting the themes and geographic setting of the work"); *Brown v. Elec. Arts, Inc.* ("*Brown I*"), No. 2:09-CV-01598-FMC, 2009 WL 8763151, at *4 (C.D. Cal. Sept. 23, 2009), *aff'd*, 724 F.3d 1235 (9th Cir. 2013) ("Use of a legendary NFL player's likeness in a game about NFL football is clearly relevant."). Miller doesn't dispute this, and the Court finds that the first prong has not been satisfied.

The second prong of the *Rogers* test requires that the Court evaluate whether the use of Miller's likeness "explicitly misleads" consumers as to the source or content of the work. *Rogers*, 875 F.2d at 999. The relevant inquiry is whether people playing *Skater XL* would be misled into thinking Miller endorses or sponsors the game. *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100. The mere use of the likeness, without more, is insufficient to make the use explicitly misleading. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002).

In *Skater XL*, the generic avatar allegedly bearing Miller's likeness is one of five characters that users can select when playing the video game. (Dkt. 18 at 13.) Four of the five characters are well-known skateboarders who are clearly identified by name and likeness in the game and are intentionally used as a selling point in the game's advertising. (Dkt. 12-3 ¶ 4.) In contrast to these four characters, the fifth skater player is completely anonymous—he's not identified by name or backstory and it's associated with no identifying markers. Indeed, the generic

avatar is intended to be something of a blank slate upon which users can customize the character according to their own preferences, including choosing the character's gender, race, and hair color. (*Id.*) Although Miller's character is displayed in at least one of the promotional images for the game (Compl. ¶ 11), he is never identified by name, nor does he suggest Defendants made any statement identifying him or remotely suggesting that he endorses the game. (Dkt. 21 at 6–7.)

Miller argues that Defendants' actions were explicitly misleading because at least two individuals contacted him after recognizing his character in the video game. (Dkt. 19 at 5.) But this misses the point. The issue here isn't whether other consumers could simply *recognize* Miller's likeness in the game, but rather whether they would be misled into believing his association with the game means he is somehow *endorsing* it. Although the issue of customer confusion is factual in nature, it's simply not plausible that the inclusion of the only anonymous skateboarder in the game, among four other explicitly identified skateboarders, would convince consumers that Miller endorsed their video game. Miller doesn't dispute that the generic avatar can be customized in several ways. That at least one of the customization combinations in the generic avatar may look like Miller is not enough to make the alleged use of his likeness *explicitly* misleading. *Brown I*, 2009 WL 8763151, at *5 ("Although a *Madden NFL* consumer could assume from the circumstances that player number 37 represents [Plaintiff], it would require a leap of logic to conclude that the anonymous, mis-numbered player's presence in the games equates to [Plaintiff]'s endorsement of the games."). The anonymous character's mere presence in *Skater XL* doesn't equate to "an *explicit* attempt to convince consumers that [Plaintiff] endorsed the game[ ]." *Id*. (emphasis in original).

Even assuming that all material factual allegations in the Complaint are true, and viewing those allegations in the light most favorable to Miller, Defendants' use

of his likeness doesn't equate to an attempt to explicitly mislead consumers into believing that he endorsed the game. Where Defendants have made no explicit representation to suggest endorsement or sponsorship by Miller, the Court cannot conclude that the use was explicitly misleading to consumers. Defendant's motion to dismiss the false endorsement claim is **GRANTED** with leave to amend.

### ii. False Advertising

A plaintiff asserting a false advertising claim "must demonstrate standing beyond the typical Article III requirements." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014)). First, a plaintiff must demonstrate that his claim is within the "zone of interests protected by the Lanham Act." *Id.* at 131–32. "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* Second, a plaintiff must demonstrate that his injuries were "proximately caused" by the defendant's violation of the Lanham Act. *Id.* at 132. This requires that a plaintiff "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Defendants move to dismiss Miller's false advertising claim for failure to allege statutory standing. Defendants claim that Miller has not—and cannot—establish competitive commercial injury because, as a skateboarder, he doesn't compete in the same market as Easy Day or Reverb, a game developer and marking agency, respectively. (Dkt. 13-1 at 6.) Defendants also contend that "[b]ecause Plaintiff has not alleged and cannot present any evidence that he lost endorsement agreements or suffered other competitive injury, the claim fails." (*Id.*) Miller hasn't pled any facts to establish that he meets either one of the *Lexmark* requirements. Noticeably absent from the Complaint, for example, are any

allegations that Miller suffered a financial loss or reputational injury of any kind as a result of Defendant's alleged unauthorized use of his image and likeness in *Skater XL*. Other than one conclusory allegation in his Complaint that Defendants' actions "have injured and will continue to injure Plaintiff" (Compl. ¶ 33), Miller hasn't supported his cause of action with any facts suggesting that he was actually harmed by Defendants' alleged wrongdoing, and his Opposition to Defendants' Motion to Dismiss fails entirely to respond to this issue. *See Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) ("There are no more specific allegations of, at the very least, lost sales or damage to its reputation. This is insufficient to plead proximate causation to support a Lanham Act claim."); *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (quoting *Lexmark*, 572 U.S.131–32) ("At the pleading stage, a plaintiff must allege 'an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.'").

The Court **GRANTS** Defendants' motion to dismiss Miller's false advertising claim with leave to amend.

### V. Motion to Strike

The Court hasn't considered the merits of Miller's common law and statutory right of publicity claims, nor has the Court considered whether punitive damages are available under these causes of action. The Court's jurisdiction in this case is predicated on the existence of claims arising under federal law, namely the Lanham Act. Miller improperly invokes the diversity jurisdiction statute, 28 U.S.C. § 1332 (Compl. ¶ 2), but § 1332 requires complete diversity, *i.e.* every plaintiff must be diverse from every defendant, and Miller, a California citizen, is not diverse from Reverb, also a California citizen. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009).

A district court "'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Sanford v.*

*MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Because the Court has dismissed all federal claims over which it has original jurisdiction, it has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). The Court exercises that discretion here and dismisses Miller's common law and statutory right of publicity claims for lack of jurisdiction.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Request for Judicial Notice, and **GRANTS** Plaintiff's Request for Judicial Notice. Plaintiff's Lanham Act claims are **DISMISSED WITHOUT PREJUDICE.** Pursuant to § 1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's statutory and common law right of publicity claims and **DISMISSES THOSE CLAIMS WITHOUT PREJUDICE**. All other pending motions and requests are **DENIED AS MOOT**.

Plaintiff shall file an amended complaint on or before **October 1, 2021**.

**IT IS SO ORDERED.**

Dated: September 16, 2021

*Larry A. Burns*

Honorable Larry Alan Burns
United States District Judge