UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY MILLER, an individual,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>EASY DAY STUDIOS PTY LTD, an Australian proprietary limited company; et al.,<br><br>　　　　　Defendants. | Case No. 20cv02187-LAB-DEB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO DISMISS [Dkt. 27]; AND**<br><br>**(2) DENYING AS MOOT MOTION TO STRIKE [Dkt. 28].** |

　　Plaintiff Zachary Miller originally filed this suit against Defendants Easy Day Studios Pty Ltd ("Easy Day") and Reverb Communications, Inc. ("Reverb") for their alleged unauthorized use of his image and likeness in the video game, *Skater XL*, as well as in the marketing and promotion of the game. The Court dismissed Miller's initial Complaint for failure to state a false endorsement and false advertising claim under the Lanham Act, but granted him leave to amend to cure the deficiencies identified in the Court's September 16, 2021 Order.

　　On October 1, 2021, Miller filed a First Amended Complaint ("FAC"), re-alleging the same claims against Easy Day and Reverb, as well as against six new Defendants: Tempo Livre Pte. Ltd.; Vans, Inc.; Sole Technology, Inc.; S.F.

Deluxe Productions, Inc.; W-D Apparel Company, LLC; and Huf Worldwide LLC. (Dkt. 25, First Amended Complaint ("FAC")). Easy Day then filed a Motion to Dismiss the FAC, (Dkt. 27), and a Motion to Strike the FAC, (Dkt. 28). Reverb joined in Easy Day's motions. (Dkt. 29, 30).[1] The Court found these matters suitable for disposition without oral argument and vacated the hearing set for November 22, 2021. *See* Fed. R. Civ. P. 78(b).

The Court has read and considered the arguments made in support of and in opposition to Defendants Easy Day and Reverb's ("Defendants") motions and concludes that Miller again fails to state a claim under the Lanham Act. The Motion to Dismiss is **GRANTED**, and the Motion to Strike is **DENIED AS MOOT.**

## I.  BACKGROUND

Miller is a "well-known professional skateboarder and has been for over thirteen (13) years." (FAC ¶ 15). Throughout his career, he has been hired to "appear[ ] in promotional campaigns[,] magazine editorial photographs[,] and social media posts promoting products" for various high-profile companies, including Quicksilver, DC Shoes, and Nixon. (*Id.*). In April 2019, Defendants proposed to Miller that he model different clothing outfits for motion capture and use in a skateboarding-themed video game. (*Id.* ¶ 18). Defendants explained that the motion capture was for a "generic" character in the video game that wouldn't resemble Miller or have any identifiable characteristics. (*Id.*). Defendants assured Miller that the video game "won't have your name anywhere or anything if you're worried about that." (*Id.*). Defendants paid Miller $250 for his work. (*Id.*).

Defendants' *Skater XL* video game was released a short time later. (*Id.* ¶ 20). In the game, users can simulate skateboarding tricks and techniques in a

---

[1] The six newly-added Defendants do not appear to have been served yet, nor have they responded or otherwise appeared in this case. The Court presently analyzes Miller's claims as against only Defendants Easy Day and Reverb.

realistic skateboarding environment. (Dkt. 12-3 ¶ 3). Users can select to play as one of five different skater characters, including as professional skateboarders Tiago Lemos, Evan Smith, Tom Asta, and Brandon Westgate, as well as a nameless "generic" skater avatar. (*Id*. ¶ 4). The first four characters are explicitly identified by name and image in the game, while the latter generic character has no name or identifying characteristics. (*Id*.). This generic character can be customized according to user preference, including customizing its gender, race, hair color, clothing, and accessories. (*Id*.).

The avatar modeled after Miller was also featured in marketing and promotional materials. (FAC ¶ 20). For instance, when the game was first released in around July 2020, Defendants also "release[ed] still images along with short video clips of a character bearing Plaintiff's image performing tricks." (*Id*.). Miller also alleges that third-party brands, like the newly added Defendants, had a co-branding relationship with Easy and Reverb and, "[o]n numerous occasions . . . us[ed] Plaintiff's unauthorized image to promote and advertise Defendants Third Party Brands' goods which directly compete with the products Plaintiff is compensated to endorse." (*Id*. ¶ 23). Some of these third-party brands, including Defendants Vans, Inc. and Tempo Livre Pte. Ltd., used the image of Plaintiff's character in the video game in social media posts to advertise their respective products. (*Id*. ¶¶ 24–25).

On November 9, 2020, Miller commenced this action against Defendants for the alleged use of his image and likeness in *Skater XL* without his consent, asserting that the "generic" avatar is not, in fact, generic, but rather an "exact copy of Plaintiff." (*See* Dkt. 1 ¶ 10). Defendants filed a motion to dismiss and strike the claims made in Miller's original Complaint. The Court granted Defendants' motion to dismiss the Complaint, finding that Miller failed to adequately plead claims for false endorsement and false advertising under the Lanham Act. The Court granted Miller leave to amend these claims.

On October 1, 2021, Miller filed his FAC against Easy Day, Reverb, and six new Defendants whom Miller claims are footwear, apparel, and/or skateboard manufacturers who wrongfully co-marketed and advertised *Skater XL* using images of Miller's character from the game. (FAC ¶ 22). The FAC reasserts the following four causes of action: (1) False Endorsement, 15 U.S.C. § 1125(a); (2) False Advertising, 15 U.S.C. § 1125(a); (3) Violation of Cal Civ. Code § 3344; and (4) Violation of Common Law Right of Publicity. Defendants now move to dismiss Miller's first and second causes of action under the Lanham Act for false endorsement and false advertising, as well as Miller's request for punitive damages. (Dkt. 27). Defendants also move to strike his third and fourth causes of action for statutory and common law right of publicity. (Dkt. 28).

## II.   LEGAL STANDARD

If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Where, as here, a defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

A defendant may also bring a Rule 12(b)(6) motion, which tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). The Court need not accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### III. DISCUSSION

#### A. Article III Standing

The Court is required to address jurisdictional issues, such as Article III standing, before proceeding to the merits. *See Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015); *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 93–94 (1998); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1117 n.1 (9th Cir. 2017). At a minimum, constitutional standing consists of three elements: 1) an injury in fact that is 2) fairly traceable to the defendant's challenged conduct, and that is 3) likely to be redressed by a favorable ruling. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citing *Lujan,* 504 U.S. at 560).

Defendants argue that Miller fails to make plausible, non-speculative allegations that he's suffered an injury-in-fact. (Dkt. 27-1 at 4). They contend that Miller's allegations of injury are merely hypothetical and conclusory because Miller fails to allege that he's been deprived of any real endorsements or

advertising opportunities, "let alone that Defendants' conduct caused Plaintiff to lose out on such deals." (*Id*.). They maintain that the allegations made in the FAC amount to nothing more than mere guesswork. (*Id*. at 8).

The Court disagrees and finds that the FAC adequately alleges Article III injury-in-fact at this stage. *Spokeo, Inc.*, 578 U.S. at 339 (citing *Lujan,* 504 U.S. at 560). Although Miller neglects to include a targeted discussion of Article III standing in his brief, the FAC does state that Defendants' unauthorized use of Miller's image and likeness in *Skater XL* has affected "his ability to maintain existing, and obtain new, sponsors," and has caused him to suffer harm to his reputation. (FAC ¶ 29). Miller alleges that the alleged unauthorized use now precludes him "from appearing in any other skateboarding video game, and/or promote and market said game, as he is now indelibly associated with Skater XL." (*Id.* ¶ 31). He also alleges that his image has now been associated with third-party brands without his consent, causing him to lose "control of his reputation and the goodwill inherent in his likeness," thereby causing damage to his reputation. (*Id.* ¶ 30).

At the motion to dismiss stage, these allegations sufficiently allege injury in fact. *See, e.g., Dickinson v. Ryan Seacrest Enterprises, Inc.*, No. CV-18-2544-GW(JPRX), 2019 WL 3035090, at *7 (C.D. Cal. Mar. 26, 2019), *aff'd*, 839 F. App'x 110 (9th Cir. 2020) (finding Article III standing established in false advertising and endorsement suit where the plaintiff alleged injury to reputation and loss of goodwill); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *4 (D. Ariz. Jan. 16, 2020) (concluding that Article III standing was established where the plaintiff alleged that the defendant's false advertising caused the plaintiff to "lose licensing fees and sales" and caused harm to his business, reputation, and good will); *Levitt v. Yelp! Inc.*, No. C 10-1321 MHP, 2011 WL 13153230, at *5 (N.D. Cal. Mar. 22, 2011) (finding allegations of harm to reputation and loss of business sufficient to confer

Article III standing). The FAC adequately alleges that Miller suffered an injury in fact caused by Defendants' unauthorized use of his image and likeness in *Skater XL* and in Defendants' marketing and promotion of the game. The Court is satisfied that Article III standing exists, and next turns to whether the FAC adequately states a claim under the Lanham Act.

### B. The Lanham Act

Section 43(a) of the Lanham Act, as codified in 15 U.S.C.§ 1125(a), is designed "to protect persons engaged in . . . commerce against unfair competition," making "actionable the deceptive and misleading use of marks." There are two bases of liability created under Section 1125(a): false association under § 1125(a)(1)(A), and false advertising under § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). The Ninth Circuit recognizes a cause of action for false endorsement as one type of false association claim. *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992*), abrogated on other grounds by Lexmark Int'l, Inc.*, 572 U.S. 118 (2014) ("A false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim . . . .").

This Court previously dismissed the Lanham Act claims asserted in Miller's original Complaint for failure to sufficiently demonstrate that the use of his image and likeness is explicitly misleading to consumers and for failure to allege competitive commercial injury. (Dkt. 24 at 10–15). Defendants again move to dismiss Miller's Lanham Act claims because the FAC fails to correct the deficiencies identified in the Court's prior Order.

#### i. False Endorsement

Defendants renew their objections to Miller's false endorsement claim, arguing that the FAC doesn't adequately demonstrate how the use of Miller's image or likeness in *Skater XL* causes customer confusion. Courts recognize false endorsement claims "brought by plaintiffs, including celebrities, for the

unauthorized imitation of their distinctive attributes, where those attributes amount to an unregistered commercial 'trademark.'" *Waits*, 978 F.2d at 1106. Under the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989), and later adopted by the Ninth Circuit, *Mattel v. MCA Records*, 296 F.3d 894 (9th Cir. 2002), a plaintiff must demonstrate that the defendant's use of the mark either: (1) is not artistically relevant to the underlying work, or (2) explicitly misleads consumers as to the source or content of the work. *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020). Defendants dispute whether the allegations in the FAC meet the second prong.

Miller alleges that Defendants released *Skater XL* on or about July 28, 2020, with Miller's image featured prominently as a main character in both the game itself, as well as in the marketing and promotion of it. (FAC ¶ 20). Miller has amended his complaint to further state that, as part of their marketing and promotion efforts, Defendants released "still images along with short video clips of a character bearing Plaintiff's image performing tricks," similar to the way in which companies in the skateboard industry release videos "where the performing skateboarders are closely associated and/or sponsored by the company that releases the skateboard video." (*Id*.). Miller contends that Defendants promoted and released *Skater XL* to "intentionally create the appearance that Plaintiff was associated with and/or an endorser of the Game, resulting in consumer confusion." (*Id*.). He also maintains that he "has become a trusted endorser of products such that when he is seen wearing or using a particular shoe, watch or riding a specific skateboard, as examples, the viewing public sees this as him endorsing that specific product[]." (*Id*. ¶ 16).

But these new allegations are not sufficient to support a claim of false endorsement. As the Court explained in its last Order, the Lanham Act "prohibits only false endorsement, not mere use of an image or name." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) (citing 5 J. Thomas

McCarthy, McCarthy on Trademarks and Unfair Competition, § 28:14 (4th ed. 1996)). The question, according to the Ninth Circuit in *Brown v. Elec. Arts, Inc.* (*"Brown II"*), is "whether there was an 'explicit indication,' 'overt claim,' or 'explicit misstatement' that caused . . . consumer confusion." 724 F.3d 1235, 1241 (9th Cir. 2013) (citing *Rogers,* 875 F.2d at 1001). Use of the mark, therefore, must explicitly "suggest sponsorship or approval" of the product, *Cairns*, 107 F. Supp. 2d at 1214, and a plaintiff "would need to demonstrate that [the defendant] *explicitly* misled *consumers* as to his *involvement*," *Brown II*, 724 F.3d at 1248 (emphasis in original).

The Court finds *Brown II* particularly instructive in this case. In *Brown II*, a retired football player, Jim Brown, brought suit against Electronic Arts ("EA") in connection with its sale of a football-themed video game series—*Madden NFL*—because it used his likeness for one of the players in the games. 724 F.3d at 1238–40. *Madden NFL* allows users of the game to choose avatars representing different professional football players. *Id*. at 1240. No names are used for players on the historical and all-time teams, of which Brown was part, "but these players are recognizable due to the accuracy of their team affiliations, playing positions, ages, heights, weights, ability levels, and other attributes." *Id*. The Ninth Circuit ultimately concluded that Brown's false endorsement claims were barred because the use of Brown's likeness was not explicitly misleading, noting that nothing in EA's promotion of the video game suggested that Brown—or any of the other fifty NFL players who were members of the same "All Madden, All Millennium" team he belonged to in the game—endorsed *Madden NFL*. *Id*. at 1246. The Court found that this conclusion wouldn't have changed even if Brown had offered survey evidence demonstrating that the game was misleading, stating that "[t]o be relevant, evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use." (*Id*.).

As in *Brown II*, the FAC doesn't adequately allege that the use of Miller's image and likeness in *Skater XL* would confuse consumers into thinking that Miller is somehow behind the video game or that he sponsors Defendants' products. *See id.* at 1245. Miller is associated with the only generic character in the game—the other four characters are well-known skateboarders and are explicitly identified by name and likeness. The generic character is meant to be anonymous and is never identified by name, whether in the game itself or in the images and videos used to promote the game. While it's possible that Miller may be identifiable by certain characteristics, including his style of clothing or his facial features, that's not enough to suggest Miller "was affiliated or connected with the work or had approved or sponsored it." *Brown II*, 724 F.3d at 1241. Nor is it enough that certain viewers allegedly recognized his character in the game. (FAC ¶ 21); *see Kent v. Universal Studios, Inc.*, No. CV 08-2704 GAF (SHX), 2008 WL 11338293, at *3 (C.D. Cal. Aug. 15, 2008) ("[E]ven if some percentage of the public recognized [Plaintiff]'s voice in connection with the video segments used in [the film,] no false endorsement claim can be made in this case. The video segment is used in an undeniably artistic way, it is seamlessly integrated into the film, it aids in furthering the film's narrative, and no mention is made of [Plaintiff] before, during or after the film in opening credits, dialog, or closing credits.").

The FAC states that Defendants "promoted and released the Game to intentionally create the appearance that Plaintiff was associated with and/or an endorser of the Game." (FAC ¶ 20). In support, the FAC cites to a promotional image meant to evidence Miller's endorsement of the game. But that image is merely of a computer-generated skateboarder whose face is partially obscured by a hat, and the text accompanying the image states only, "Skater XL: Your Tricks. Your Style. Infinite Possibilities." (*Id.*). Nowhere in that promotional image, or in any of the third-party Instagram posts Miller cites to in the FAC, (*see id.*

¶¶ 24–25), is there any explicit suggestion that Miller endorses or is in any way affiliated with *Skater XL*. *See Champion v. Moda Operandi, Inc.*, 561 F. Supp. 3d 419, 436 (S.D.N.Y. 2021) ("Nowhere does the Vogue Runway Editorial Feature – in the body of the editorial or by positioning the words "Buy on Moda Operandi" below a photo of a model – ever explicitly misrepresent that Plaintiffs endorsed Moda as the seller of the clothes they modeled or are in any way affiliated with Moda."). Although he acknowledges that the images of his character used in the Instagram posts of third parties like Defendants Vans Inc. and Tempo Livre Pte. Ltd. don't identify him by name, he nevertheless maintains that their "unauthorized use of [his] image closely mimics how Plaintiff's own sponsors promote their goods that Plaintiff endorses," (FAC ¶ 26), and as a result, "consumers and the public are likely to associate Plaintiff with Defendants' products," (*id*. ¶ 27). But even accepting these allegations as true, the mere fact that Defendants are using still images of Miller's character in their promotional Instagram posts in the same way other skateboarding companies do in promotion of their own products is not enough to support a false endorsement claim. *Cf. Harold Lloyd Ent., Inc. v. Moment Factory One, Inc.*, No. LACV1501556JAKMRWX, 2015 WL 12765142, at *11 (C.D. Cal. Oct. 29, 2015) ("Defendant's use of the Harold Lloyd and clock scene marks do not constitute an express attempt to suggest to consumers that Harold Lloyd endorsed the Time Tower video. . . . Thus, even if it were determined that the Time Tower video used Lloyd's likeness, that use is protected by the First Amendment."); *Kent*, 2008 WL 11338293, at *3 ("Nothing in the movie explicitly indicates that Kent has endorsed, approved, or even commented on the movie in which his work appears.").

The FAC fails to suggest that Defendants explicitly misrepresented that Miller endorses or sponsors *Skater XL*. The Court finds that Miller has, once again, failed to plead a viable false endorsement claim and therefore **GRANTS**

Defendants' motion to dismiss Miller's first cause of action. Because it is clear that any further amendment here would be futile, this claim is **DISMISSED WITHOUT LEAVE TO AMEND**. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

### ii. False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B)

Defendants next argue that Miller has not alleged facts establishing statutory standing to assert a false advertising claim. The test applied to Lanham Act claims by the Ninth Circuit requires a plaintiff to show "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011) (internal citation omitted). "[A] false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim." *Id.* at 825. Even without direct evidence of lost sales or concrete proof of injury, a plaintiff may "establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." *Id.* Direct competition between a plaintiff and defendant is "strong proof that plaintiffs have a stake in the outcome of the suit" sufficient to establish Lanham Act standing. *Id.* at 825–26.

A plaintiff asserting a false advertising claim "must demonstrate standing beyond the typical Article III requirements." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (citing *Lexmark Int'l, Inc.*, 572 U.S. at 131). A plaintiff must first demonstrate that his claim is within the "zone of interests protected by the Lanham Act." *Lexmark Int'l, Inc.*, 572 U.S. at 131–32. "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. Next, a plaintiff must demonstrate that his injuries were "proximately caused" by the defendant's violation of the Lanham Act. *Id.* at 132. This requires that a plaintiff "show economic or reputational injury flowing directly

from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Here, Defendants argue that Miller's false advertising claim fails because the parties are not competitors, and because Miller is unable to allege any facts to show any actual loss of compensation. (Dkt. 27-1 at 8). But the Supreme Court has clarified that a plaintiff may bring suit under the Lanham Act even if he isn't a direct competitor with the defendant, and it has even expressly rejected any "rule categorically prohibiting all suits by noncompetitors." *Lexmark*, 572 U.S. at 136. Any commercial injury, including harm to reputation, will suffice. *Id*. at 132. Although Miller's original Complaint was almost entirely devoid of any allegations of injury, the FAC now includes allegations that Defendants' unauthorized use of Miller's image "in association with numerous skateboard companies and with products that directly compete against his existing sponsors" has caused harm to his reputation and his ability to maintain existing, and obtain new, sponsors. (FAC ¶ 29). The FAC further states that Miller "is precluded from appearing in any other skateboarding video game, and/or promot[ing] and market[ing] said game, as he is now indelibly associated with Skater XL." (*Id*. ¶ 31).[2] Although the parties appear to neither be direct competitors nor compete for the same consumer

---

[2] To the extent Miller suggests he's suffered an injury to his commercial interests by not getting compensated sufficiently for his work with Defendants, that is not the kind of injury contemplated by a Lanham Act false advertising claim. (*See id*. ¶ 18 ("If Plaintiff had consented to [Defendants] using his image in a video game and its marketing material, . . . Plaintiff would have required significantly more compensation than he received because he would have been aware that by appearing in a video game and the marketing material for it, it would foreclose appearing in another video game and other sponsorship opportunities.")).

base, the Court finds these allegations of reputational harm sufficient on a motion to dismiss.

However, where parties don't compete with one another, "it may be more difficult to establish proximate causation." *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1106 (S.D. Cal. 2018). As the Court has noted, the parties are not in the same market, and thus, the Court cannot presume that any injury to Miller flows from Defendants' use of Miller's images in association with *Skater XL*. *Geiger v. Creative Impact Inc.*, No. CV-18-01443-PHX-JAT, 2020 WL 4583625, at *6 (D. Ariz. Aug. 10, 2020) (citing *TrafficSchool.com, Inc.*, 653 F.3d at 827). Proximate causation is satisfied where the plaintiff can demonstrate that the "deception of consumers cause[d] them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. The FAC doesn't allege—and the Opposition doesn't address—whether or how Defendants' purported false advertising necessarily caused *consumers* to withhold trade from Miller. *See Lexmark*, 572 U.S. at 133–34. The FAC merely states, in conclusory fashion, that "consumers and the public are likely to associate Plaintiff with Defendants' products," (FAC ¶ 27), and will be harmed by being "deceived into purchasing [*Skater XL*] through the false endorsement," (*id*. ¶ 28). But these statements create a flawed chain of inferences, which fails to demonstrate how Defendants' alleged unauthorized use necessarily led to Miller's economic and reputational injury. Neither the FAC nor the Opposition touches on this issue at all, and the Court finds these allegations to be "threadbare recitals," "supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Instead, Miller's true complaint, reiterated throughout his FAC, is that the alleged unauthorized use of his image caused him to lose business from existing and potential sponsors—not consumers. (*See, e.g.*, *id*. ¶ 29 ("Defendants' countless unauthorized uses of Plaintiff's image in association with numerous skateboard companies and with products that directly compete against his

existing sponsors harms his reputation and his ability to maintain existing, and obtain new, sponsors."), ¶ 31 ("As a result of Defendants Easy Day and Reverb's unauthorized use of his image, Plaintiff is precluded from appearing in any other skateboarding video game, and/or promot[ing] and market[ing] said game, as he is now indelibly associated with Skater XL.")). However, because the parties are not direct competitors, and because Miller supplies the Court with no explanation as to how his economic and reputational injury was caused by consumers withholding trade from him on account of Defendants' deception, the Court has no option but to conclude that the causal link is attenuated and therefore insufficient to establish a false advertising claim. *See ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020) ("No factual allegations support the inference that a consumer buying Defendant's purportedly falsely advertised products would have otherwise bought 'products sourced by [Plaintiff]' *but for* Defendant's false advertising.") (emphasis in original).

The Court, therefore, **GRANTS** Defendants' motion to dismiss Miller's false advertising claim. Because it isn't clear that further amendment of this claim would be futile, Miller is permitted to file a motion for leave to amend this claim. The motion must identify how further amendment will cure the deficiencies associated with this claim as identified in this Order.

### IV.  Remaining Claims

The Court does not consider the merits of Miller's common law and statutory right of publicity claims, nor his request for damages. The Court's jurisdiction in this case is predicated on the existence of Miller's Lanham Act claims. Because the Court has dismissed those claims, it has discretion to decline jurisdiction over Miller's remaining state law claims. 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). The Court exercises that discretion here and dismisses Miller's third and fourth causes of

action for lack of jurisdiction. Defendants' Motion to Strike is therefore **DENIED AS MOOT**.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Miller's first and second causes of action for false endorsement and false advertisement, respectively. Pursuant to § 1367(c), the Court declines to exercise supplemental jurisdiction over Miller's statutory and common law right of publicity claims, and **DISMISSES** Miller's FAC as against Defendants Easy Day and Reverb. Miller's false endorsement claim is dismissed without leave to amend. To the extent Miller wishes to amend his false advertising claim, he must file a motion for leave to amend by **September 30, 2022**, explaining to the Court how he intends to cure the deficiencies associated with this claim as identified in this Order.

**IT IS SO ORDERED.**

Dated: September 16, 2022

*[signature]*

Honorable Larry Alan Burns
United States District Judge